[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2001
THOMAS K. KAHN
CLERK

No. 00-16685

Tax Court No. 7832-98

DOUGLAS P. McLAULIN, JR.,
AUGUSTUS H. KING, III,
ALFRED E. & LYNN B. HOLLAND,

                                                      Petitioners,

        versus

COMMISSIONER OF INTERNAL REVENUE,

                                                      Respondent.

Appeal from a Decision of the United States Tax Court

**(December 21, 2001)**

Before BLACK,  HILL and STAPLETON*, Circuit Judges.

_____
*Honorable Walter K. Stapleton, U.S. Circuit Judge for the Third Circuit, sitting by designation.

HILL, Circuit Judge:

This appeal from the tax court involves a single issue of apparent first impression.[1] Does the spinoff distribution by a parent corporation of its 100% ownership interest in its subsidiary corporation to the three sole shareholders of the parent corporation qualify as a *tax-free* distribution under the five-year active business requirement of I.R.C. §§ 355(a)(1)(C) and (b)(2)(D)(ii), when the spinoff takes place on the same day that the subsidiary corporation redeems the stock of an unrelated individual shareholder in a taxable transaction, causing the parent corporation to *acquire* 100% control of the subsidiary?[2] The tax court found that the spinoff resulted in taxable gain to the parent corporation under I.R.C. § 311(b). As the parent corporation was also an S Corporation, the gain passed through and was taxable to its shareholders. I.R.C. § 1366(a). *See also* note 4 *supra.* Based upon the following discussion, we affirm the decision of the tax court.

---

[1] We speculate that, in standard practice, a company will typically obtain a private letter ruling from the Internal Revenue Service, determining in advance whether such a spinoff will be taxable or not, prior to attempting such a corporate reorganization.

[2] "Control" is defined for the purpose of corporate reorganizations in Section 368(c) as "the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation."

I.

The parties stipulated to most of the facts.[3]   Since 1959, parent corporation

Ridge Pallets, Inc. (Ridge) has been a central Florida corporation engaged in the

forest products business.[4]  At all times relevant here, it was equally owned by

Douglas P. McLaulin, Jr., Augustus H. King III and Alfred E. and Lynn B. Holland,

petitioners-appellants in this appeal (collectively the Ridge shareholders).

Since 1981, subsidiary corporation Sunbelt Forest Products, Inc. (Sunbelt)

has been engaged in the production and sale of pressure-treated lumber in central

Florida.  At all times relevant here, it was equally owned by Ridge and John L.

Hutto.  Hutto served as Sunbelt's chairman of the board of directors and as

president.

Dissatisfied with Hutto's management of Sunbelt, Ridge sought to purchase

Hutto's 50% stock ownership interest in Sunbelt or sell its 50% interest to Hutto.

By early 1992, Ridge and Hutto had tentatively agreed that a 50% interest was

---

[3] The parties stipulated that if the spinoff did not qualify for Section 355 nonrecognition treatment, the tax deficiencies determined by the Commissioner of the Internal Revenue Service (Commissioner) would be accepted as correct.

[4] Ridge is an S Corporation under Section 1361(a)(1).  As a pass-through corporate entity, its taxes flow directly to its shareholders.  In 1993, S Corporations were not permitted to have a wholly owned subsidiary.  Once Ridge acquired control of Sunbelt, in order to maintain its S Corporation status, it was forced to spin it off.  The law was later modified to allow ownership under certain conditions.

worth $825,000.  In mid-1992, Hutto decided to sell his Sunbelt shares to Ridge and leave Sunbelt.

The parties agreed that Sunbelt would redeem Hutto's shares for $828,943.75 in cash and $101,000 in real estate.  On January 14th, Ridge loaned $900,000 cash to Sunbelt.[5]  On January 15th, Sunbelt used part of that cash to redeem Hutto's shares for $829,000, plus real property worth more than $100,000, resulting in a taxable gain to him of approximately $860,000.[6]  On January 14h, Ridge owned 50% of Sunbelt and Hutto owned 50% of Sunbelt.  On January 15th, after the Hutto redemption, although the number of shares held did not change, Ridge owned 100% of Sunbelt.  In an effort to maintain its S Corporation status,  Ridge spun off all its Sunbelt shares pro rata to the Ridge shareholders, resulting in a brother-sister relationship rather than a parent-subsidiary relationship.[7]

When Ridge filed its S Corporation income tax return for the fiscal year ending July 25, 1993, it did not report any taxable gain from the Sunbelt spinoff.

---

[5] It is undisputed that Sunbelt did not have the cash necessary to fund the redemption.

[6] There is no dispute that the redemption resulted in a taxable event to shareholder Hutto. Hutto's basis in the Sunbelt stock was his initial investment of $66,667.  Therefore his taxable gain was the difference between the redemption price and his basis).

[7] The Ridge board of directors set forth its reasons for the distribution in its corporate minutes: "WHEREAS, if Corporation continues to wholly own Sunbelt subsequent to the redemption, Sunbelt and Corporation will be prohibited from electing or maintaining their respective Subchapter S status for Federal tax purposes and for purposes of the income tax imposed by the State of Florida . . .

4

The corporate return included a statement that no gain or loss was recognized because the spinoff qualified for nonrecognition treatment under section 355. The Ridge shareholders also filed this supplemental statement with their individual income tax returns.

The Commissioner of Internal Revenue Service (Commissioner) disagreed with the supplemental statement. He determined that the spinoff did not qualify for section 355 nonrecognition treatment, and that Ridge realized a taxable gain of $863,277 from the spinoff, which was passed through in pro rata shares to the Ridge shareholders.

The Commissioner based his determination on two theories: (1) that although Sunbelt had been engaged in an active trade or business for more than five years on the date of the distribution to Ridge shareholders, the spinoff failed the active business requirement of Sections 355(a)(1)(C) and (b)(2)(D)(ii), as actual control of Sunbelt was acquired by Ridge on January 15th, within the five year period, in a transaction in which gain or loss was recognized, *i.e.,* the Hutto redemption; and, (2) the spinoff was not designed to achieve a corporate business purpose as required under the regulations. *See* Treas. Regs. § 1.355-2(b).

The Ridge shareholders filed petitions in tax court contesting the Commissioner's determination. The tax court held in favor of the Commissioner on

the basis that the spinoff failed the active business requirement of the statute, finding that it need not reach the second theory. The tax court stated that the Hutto "redemption accomplished much more than merely the conversion of indirect to direct control of Sunbelt [by Ridge]. It accomplished the acquisition of control where none had existed previously." The Ridge shareholders now appeal the decision of the tax court.

## II.

The interpretation of a statutory section of the Internal Revenue Code by the tax court is a question of law reviewed *de novo*. *See Fabry v. Com'r*, 223 F.3d 1261, 1263 (11th Cir. 2000).

## III.

*A. Introduction*

It is not necessary for us to present a detailed analysis of the corporate reorganization provisions of the Internal Revenue Code in analyzing whether the distribution by Ridge of Sunbelt stock to Ridge shareholders meets all six of the requirements for nonrecognition treatment under Section 355, as four of the six requirements have been conceded by the Commissioner.[8] We focus on the

---

[8] Of the six requirements, four are embodied in the statute and two in the regulations. The six requirements are: (1) under Section 355(a)(1)(A), the distribution must be solely stock or securities of a corporation that the distributing corporation controls immediately before the distribution; (2) under Section 355(a)(1)(B), the transaction must not be a device for the

6

remaining two: (1) does the spinoff meets the active business requirements of Section 355(a)(1)(C); and, if so, (2) does it have a valid business purpose under Treas. Reg. § 1.355-2(b).[9]

## B. *The Third Requirement of Section 355 - That There Be An Active Business For Five Years*

### 1. *The Statute*

The active business requirement is defined in Section 355(a)(1)(C). The definition is refined later in the statute by four statutory conditions. *See* Sections 355(b)(2)(A)-(D).[10] They are: (1) that Sunbelt must be engaged in the active

---

distribution of earnings and profits of either the distributing or controlled corporation; (3) under Section 355(a)(1)(C), the active business requirements must be satisfied; (4) under Section 355(a)(1)(D), the distributing corporation must distribute either all of the stock and securities of the subsidiary or an amount sufficient to constitute control; (5) under Treas. Reg. § 1.355-2(b), the distribution must have a valid business purpose; and (6) under Treas. Reg. § 1.355-2(c), there must be a continuity of interest by the individuals or entities that owned, either directly or indirectly, the business prior to the spinoff.

[9] The first and fourth requirements of Sections 355(a)(1)(A) and (D) were met as immediately prior to the distribution of Sunbelt stock, Ridge held a100% interest which it distributed in its entirety. The second and sixth requirements of Section 355(a)(1)(B) and Treas. Reg. § 1.355-2(c) were not contested by the Commissioner, *i.e.*, that the transaction was a device for the distribution of corporate earnings and profits, or that there was no continuity of interest. The Commissioner is only challenging the third and fifth requirements, that there was no active business nor business purpose.

[10] Section 355(b) provides:

(B) Requirements as to Active Business. –

    (1) In general. –Subsection (a) shall apply only if either -

7

(A) the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribution in the active conduct of a trade or business, or

(B) immediately before the distribution, the distributing corporation had no assets other than stock or securities in the controlled corporations and each of the controlled corporations is engaged immediately after the distribution in the active conduct of a trade or business.

(2) Definition. –For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if –

(A) it is engaged in the active conduct of a trade or business, or substantially all of its assets consist of stock and securities of a corporation controlled by it (immediately after the distribution) which is so engaged,

(B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution,

(C) such trade or business was not acquired within the period described in subparagraph (B) in a transaction in which gain or loss was recognized in whole or in part, and

(D) control of a corporation which (at the time of acquisition of control) was conducting such trade or business –

(i) was not acquired by any distributee corporation directly (or through 1 or more corporations, whether through the distributing corporation or otherwise) within the period described in subparagraph (B) and was not acquired by the distributing corporation directly (or through 1 or more corporations) within such period, or

(ii) was so acquired by any such corporation within such period, but in each case in which such control was so acquired, it was so acquired, only by reason of transactions in which gain or loss was not recognized in whole or in part, or only by reason of such transactions combined with acquisitions before the beginning of such period.

conduct of a trade or business, Section 355(b)(2)(A); (2) that Sunbelt's trade or business must have been actively conducted for the previous five years, Section 355(b)(2)(B); (3) that Sunbelt's trade or business must not have been acquired within five years in a transaction in which gain or loss was recognized, Section 355(b)(2)(C); and (4) that control of Sunbelt was not acquired within the five-year period, *or if it was acquired within such five-year period*, it was acquired by reason of a transaction or transactions *in which no gain or loss was recognized*, Section 355(b)(2)(D)(ii).

### 2. The Contentions of the Commissioner

The Commissioner argues that Ridge acquired control of Sunbelt on January 15th, sufficient to defeat the condition of Section 355(b)(2)(D)(ii) when Hutto realized a gain on his redemption. In addition to the language of the statute itself, he relies upon Rev. Rul. 57-144, 1957-1 C.B. 123.[11]

In Rev. Rul. 57-144, a parent corporation (qualifying as a personal holding company) controlled two operating subsidiaries, corporation A and corporation B. The parent corporation distributed the stock of corporation A to the shareholders of the parent corporation. After the distribution, corporation B was merged into the

_____

[11] Both parties appear to concede that there is no case law on this issue.

parent corporation. When corporation B redeemed a portion of its minority interest stock, the parent corporation obtained control, or 80%, of corporation B during the five-year period preceding the distribution of corporation A stock. *Id.*

Hence, in Rev. Rul. 57-144, the Commissioner held that the distribution of corporation A stock by the parent corporation did not qualify as a tax-free spinoff under Section 355. The event would be taxable whether the stock of corporation A was distributed before or after the merger of corporation B into the parent corporation. Dividend treatment results to the parent corporation shareholders. *Id.*

The same result occurs here argues the Commissioner. On January 14th, Ridge loaned cash to Sunbelt. On January 15th, Sunbelt used part of that cash and real estate to redeem Hutto's shares. On January 14th, Ridge owned 50% of Sunbelt and Hutto owned 50% of Sunbelt. On January 15th, after the Hutto redemption, Ridge owned 100% of Sunbelt. Therefore, the Commissioner contends that Ridge *acquired control* of Sunbelt on January 15th in a *taxable transaction*, and failed to meet the statutory language of Section 355(b)(2)(D)(ii), the fourth condition of the third requirement.

### 4. *The Contentions of the Ridge Taxpayers*

The Ridge shareholders claim that the facts of Rev. Rul 57-144 are distinguishable from the facts of this case. In addition, they claim that this case

10

does not present tax avoidance of the type that the active business requirement of Section 355(b)(2)(D) was designed to combat. The taxpayers argue that the redemption "merely shifted control to Ridge by default" and that "[the change in] Ridge's ownership percentage in Sunbelt . . . was merely a collateral consequence of the [r]edemption."

### 5. *Discussion*

The tax court found that Ridge failed the third requirement for nonrecognition treatment under Section 355(a)(1)(C) as it failed to satisfy its fourth condition, *i.e.*, Ridge acquired control of Sunbelt on January 15th, within five years (on the same day) of the taxable Hutto redemption. Section 355(b)(2)(D)(ii). It concluded therefore that it need not reach the valid business purpose argument. Treas. Reg. § 1.355-2(b).

The tax court found that the facts of Rev. Rul. 57-144 were not distinguishable from the present case in any significant way. We agree. While the overall corporate structure is more complex in the revenue ruling, the net result is applicable here. A parent corporation [Ridge] acquired control of a subsidiary corporation [Sunbelt] by virtue of the subsidiary [Sunbelt] corporation's redemption of the stock of another shareholder [Hutto], whose interest in the subsidiary

[Sunbelt] before the redemption exceeded 20 percent [Hutto owned 50 percent].[12]

*Id.*

We need make no distinction between indirect control of Sunbelt by Ridge at 50% ownership and direct control of Sunbelt by Ridge at 100% ownership. Under the plain meaning of the statute, Ridge *acquired control* on January 15th, the moment the taxable Hutto redemption occurred. This event resets the five-year clock and renders Ridge's distribution of the Sunbelt stock taxable, albeit stock that it had held for more than twelve years.

As the tax court said, this is not the mere conversion of indirect control to direct control. It is the "acquisition of control where none had existed previously." Therefore, under the statute, the spinoff fails to meet the third of the six requirements for nonrecognition treatment. Gain is generated to Ridge and passed through to the Ridge shareholders.[13]

_____

[12] With this said, however, based upon the plain meaning of the statute, we need not resolve the issue of the amount of deference due agency rulings and whether *United States v. Howard*, 855 F.2d 832 (11th Cir. 1988) and *Knowlton v. Comm'r*, 791 F.2d 1506 (11th Cir. 1986) remain good law after the Supreme Court's recent decision in *United States v. Mead Corp.*, 121 S.Ct. 2164 (2001). Even without deference, under the plain meaning of the statute, "acquire" means "to come into possession or control of often by unspecified means," "to come to have as a new or additional characteristic," *Webster's New Collegiate Dictionary* 10 (1981), or "to gain possession or control of; to get or obtain," *Black's Law Dictionary* 24 (7th ed. 1999). The Ridge shareholders' version of the word "acquire" is incorrect.

[13] We find no merit to the Ridge shareholders' additional or alternative arguments. As we agree with the tax court that they have failed to satisfy the active business requirement of Sections 355(a)(1)(C) and (b)(2)(D)(ii), we need not reach the Commissioner's second argument

12

IV.

The decision of the tax court is

AFFIRMED.

---

that there was no corporate business purpose to the spinoff.