127 T.C. No. 4


UNITED STATES TAX COURT


ANTHONY AND LENA C. ANDRE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2681-04L.                    Filed August 28, 2006.


    R issued P a notice of federal tax lien for the taxable
years 1996-2000.  P then requested a CDP hearing to review R's
proposed collection action for the years 1990-2000.  R
subsequently issued P a notice of intent to levy for the taxable
years 1990-1994.  R then issued a notice of determination
sustaining the proposed collection action, and P timely filed a
petition for review.  R then moved to dismiss the petition for
taxable years 1990-1994.

    <u>Held</u>, under sec. 6330(a)(3)(B), a taxpayer has the right "to
request a hearing *during* the 30-day period" before the day of the
first levy for a particular tax period, and premature requests
for a CDP hearing cannot lead to a valid notice of determination
and jurisdiction in this Court under sec. 6330(d).


    <u>Timothy Tierney</u>, for petitioners.

    <u>Hieu Nguyen</u>, for respondent.

OPINION

HOLMES, Judge: A taxpayer who gets a notice telling him that the IRS is about to levy on his property has thirty days to ask for a collection due process (CDP) hearing. If his request is late, we know what happens--he gets no CDP hearing. But what if his request is early?

This is the novel question raised by this motion to dismiss.

## Background

On September 28, 2001, the Commissioner sent Anthony and Lena Andre a notice that the IRS had filed a federal tax lien on their property to collect unpaid taxes from 1996 through 2000. In keeping with the IRS's standard procedure, the notice included a form for the Andres to fill out and return if they wanted a hearing to discuss the lien. The Andres filled out the form, but in the space marked "Taxable Period(s)" wrote down "1990-2000." They also checked a box on the form stating that they disagreed with the IRS's "notice of levy." Because the IRS had sent them only a notice of federal tax lien, the IRS reacted by sending out a form letter on October 5, telling them they had checked the wrong box, and including another blank CDP Hearing request form. The Andres filled in that form, and this time checked the "lien" box, but they again filled in "1990-2000" in the "Taxable Period(s)" space. They mailed it on October 12.

On December 13, 2001, the Commissioner sent the Andres

another notice, this one telling them that the IRS intended to levy on their property to collect their unpaid taxes from 1990-94. To finish this picture of confusion, the Commissioner then sent the Andres a notice of determination on January 16, 2004. This notice of determination discusses only respondent's notice of federal tax lien for 1996-2000, but its first and third pages prominently list--under the heading "Tax Periods"--both 1990-94 and 1996-2000.

The Andres filed a timely petition in Tax Court. The Commissioner moved to dismiss the case for lack of jurisdiction and to strike as to tax years 1990-95. IRS records show that the Andres don't owe any tax for 1995, and they do not contest the Commissioner's motion to dismiss as to that year. But our decision on the other years that the Commissioner seeks to dismiss depends on whether the Andres' premature request for a CDP hearing for their 1990-94 tax years was valid; and whether the Commissioner's issuance of a notice of determination that mentions those years cures any defect.

## Discussion

Once the Commissioner assesses a tax, he is allowed to collect any unpaid portion of it by filing liens against, and levying on, a taxpayer's property. But first (with some exceptions that aren't present here), he has to notify the taxpayer whose property he wants to take. He does this with

notices on standard forms--commonly, if prosaically, called the Notice of Federal Tax Lien (NFTL) and Notice of Intent to Levy (NIL).

The Code allows taxpayers who are sent one of these notices a right to a hearing--commonly called a CDP hearing--before the IRS can use a lien or levy to collect the unpaid taxes. Under section 6320(a)(3)(B),[1] a taxpayer has the right "to request a hearing during the 30-day period beginning on the day after the 5-day period" after the filing of the notice of the lien. Under section 6330(a)(3)(B), a taxpayer has the right "to request a hearing during the 30-day period" before the day of the first levy for a particular tax period.

An IRS employee presides at a CDP hearing and then issues a notice of determination on whether the collection method proposed by the Commissioner is appropriate. Secs. 301.6320-1(b)(2), Q&A-B3, 301.6330-1(e)(3), Q&A-E8(i), Proced. & Admin. Regs. Once the IRS sends out a notice of determination, a taxpayer who wants to challenge it in Tax Court must file his petition within 30 days.

This usually makes figuring out whether or not we have jurisdiction fairly easy--we have jurisdiction if there is a valid notice of determination and a timely petition for review.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended.

Lunsford v. Commissioner, 117 T.C. 159, 161 (2001). In deciding whether we have jurisdiction, we do not generally go behind the notice. "[I]f Appeals issues a notice of determination that clearly embodies the Appeals officer's determination concerning collection by way of levy and the taxpayer timely files a petition contesting the determination," then we have jurisdiction. Kim v. Commissioner, T.C. Memo. 2005-96.

We have also held, though, that the Commissioner has no power to waive or extend section 6320 and section 6330's time limits for requesting a CDP hearing. Moorhous v. Commissioner, 116 T.C. 263, 270 n.5 (2001); Kennedy v. Commissioner, 116 T.C. 255, 262 (2001). And, if a taxpayer makes a timely request for a CDP hearing, but the Commissioner sends him something other than a notice of determination at its conclusion, we don't just say "no notice of determination, no jurisdiction", but we look to see whether what the IRS sent out should be treated as a notice of determination. See Craig v. Commissioner, 119 T.C. 252, 259 (2002).

The Commissioner's first argument in favor of his motion is that the Andres' request for a CDP hearing was effective only for the 1996-2000 years because it was premature for the 1990-94 years. Without a timely request, he contends, there can be no valid notice of determination and so no jurisdiction. The key language in the Code is section 6330(a)(2), which states that an

NIL must be mailed "not less than 30 days before the date of the first levy with respect to the amount of the unpaid tax for the taxable period." The same section then says that the NIL must notify the taxpayer of his right "to request a hearing during the 30-day period under paragraph (2)." Sec. 6330(a)(3)(B) (emphasis added).

The use of the word "during" strongly suggests that a premature request for a CDP hearing is not valid. This suggestion is strengthened when one considers the regulations. No fewer than four times, they state or imply that there is a definite window within which a taxpayer has to ask for his hearing:

> ! "The taxpayer must request the CDP hearing within the 30-day period commencing on the day after the date of the CDP Notice [i.e., either the NIL or NFTL]." Sec. 301.6330-1(b)(1), Proced. & Admin. Regs.;

> ! "[T]he CDP hearing must be requested during the 30-day period that commences the day after the date of the CDP Notice." Sec. 301.6330-1(c)(1), Proced. & Admin. Regs.;

> ! "A taxpayer must submit a written request for a CDP hearing within the 30-day period commencing the day after the date of the CDP Notice issued under section 6330." Sec. 301.6330-1(b)(1), Proced. & Admin. Regs.; and

> ! Sec. 301.6330-1(c)(3), Example (1), Proced. & Admin. Regs. (the same).

In the face of seemingly plain statutory language and even plainer regulations, the Andres' position does not look very strong. But they can point to similar areas of law where

premature requests are "related forward" to the first date on which they could be made. The best known is Federal Rule of Appellate Procedure 4(a), which requires a notice of appeal to be filed "within 30 days after the judgment or order appealed from is entered." That rule was amended in 1979 to allow the relation forward of prematurely filed appeals to the date of entry. Fed. R. App. P. 4(a)(2).

The Advisory Committee Notes make clear, though, that even before the 1979 amendment, such premature notices were effective. Fed. R. App. P. 4(a)(2), 28 U.S.C. app. at 587 (2000). The consensus view was that "unlike a tardy notice of appeal, certain premature notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal." FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 273 (1991). This lenient reading of the rule's language "was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment. Id. at 276.

An even closer analogy is rooted in section 6330 itself. Section 6330(d)(1) governs the case of a taxpayer who appeals from the Commissioner's notice of determination after a CDP

hearing, but appeals to the wrong court.[2]  In such cases, the Code says, "a person shall have 30 days <u>after</u> the court determination to file such appeal with the correct court." (Emphasis added.)

In the one case that has construed this part of section 6330, the analogy to premature notices of appeal prevailed.  That case was <u>Render v. IRS</u>, 309 F. Supp. 2d 938 (E.D. Mich. 2004). In <u>Render</u>, the taxpayer wanted to challenge a notice of determination sustaining an NIL to collect on employment taxes. She filed a petition in our Court--but this was the wrong venue, because the Tax Court doesn't have jurisdiction over employment taxes.  The IRS pointed this out in its motion to dismiss for lack of jurisdiction, and the Tax Court sent Render an order setting a deadline for her to respond.  Without filing any response in Tax Court, Render went to District Court and filed a complaint there.  But she filed her complaint well before the Tax Court issued its ruling on the Commissioner's motion to dismiss. The Government then moved in District Court to dismiss the complaint, on the ground that she had not filed it within 30 days <u>after</u> her Tax Court petition was dismissed.

The District Court denied the motion.  It recognized that Render had "failed to comply with the strict terms of the

---

[2] This results from our Court's jurisdiction over CDP appeals only where we have "jurisdiction of the underlying tax liability."  Sec. 6330(d)(1).  (This usually means income taxes).

statute," id. at 943, but reasoned that

> Just as clearly, however, Plaintiff's course of action comported with the obvious intent of the statute-- namely, to provide only a limited window of opportunity to cure a mistaken filing with the wrong court. Presumably, Plaintiff had no argument to offer against the IRS's contention that the Tax Court lacked jurisdiction over her appeal. No statutory purpose would have been advanced if Plaintiff had awaited a formal Tax Court ruling on this point before commencing this action.

Id.

We believe, however, that the Andres' case is not enough like FirsTier or Render. Even setting to one side the question, addressed by neither party, of whether the Commissioner's regulations--so clear on this point--can trump a mere rule of construction, we note that both the Supreme Court in FirsTier and the District Court in Render carefully described a key reason for allowing the premature filings in those cases to be effective: lack of prejudice to the other party. See FirsTier, 498 U.S. at 273 ("certain premature notices do not prejudice the appellee"); Render, 309 F. Supp. 2d at 944 (premature filing of complaint "caused no conceivable prejudice to the opposing party").

Allowing premature CDP requests to be effective, in contrast, would cause prejudice to the Commissioner. The IRS is a bulk-processing organization that sends and receives hundreds of millions of notices and returns each year. If the system is to work, almost all of those notices and returns have to quickly fit into pigeonholes (or their modern-day equivalent, the

database field), rather than become the object of contemplation by a IRS clerk charged with finding the right place to put a particular piece of correspondence.  This is especially important when a taxpayer's relation to the IRS reaches the point of enforced collection through levy.  Section 6330(e) requires the Commissioner--once he receives a request for a CDP hearing--to stop trying to levy, to start tolling the period of limitations for collection and any criminal prosecution, as well as to toll the period for a taxpayer to file a refund or wrongful levy suit under section 6532.

The IRS keeps track of taxpayers by tax year, and it organizes its attempts at collection by tax year.  When a taxpayer gets a NFTL or NIL for a particular tax year, the proposed collection action is noted in the file for that tax year alone.  And the IRS is lenient about what counts as a CDP request that comes in during the 30-day window starting after it mails out an NIL:  It allows a "written request in any form."  Sec. 301.6330-1(c)(2), A-C1(i), Proced. & Admin. Regs.  The eye of the IRS, to paraphrase the psalmist, is only at that moment open "upon those who fear him, upon those that hope in his mercy."  Or at least upon those asking for a CDP hearing.

But this lenience about the form of a request, combined with severity about when the request can be received, also reflects the human limits of the IRS in processing as efficiently as

possible the correspondence that it receives from a multitude of taxpayers.  NILs and NFTLs are sent out in great volume:  In fiscal year 2003, for example, government statistics show that the IRS issued more than 1.5 million levies and filed over 500,000 liens.  TIGTA Rept. 2004-30-083, "Trends in Compliance Activities Through Fiscal Year 2003," Doc 2004-9294, 2004 TNT 84-16, figs. 16 & 17 (April 2004).

The Code's provisions on collection, and the IRS's data processing, are geared to a particular sequence of actions-- notice of levy, request for a CDP hearing, suspension of collection, holding a CDP hearing, issuing a notice of determination after a CDP hearing, judicial review, and only then actually levying.  We think the Commissioner is right when he argues that allowing a taxpayer to disrupt this sequence with a premature CDP request would be quite likely to cause prejudice. It would, for example, let taxpayers unilaterally suspend collection action against them under section 6330(e) even before the IRS decided whether to try to collect through a levy.  It would cause confusion in calculating the period of limitations affected by the suspension of collection that a proper CDP request triggers.  And it would force the IRS to look through every piece of correspondence sent in by a taxpayer concerning an unpaid liability to judge whether it sufficed as a CDP hearing request.

We therefore conclude that premature requests for a CDP hearing are not effective.[3]

The Andres' alternative argument is that the defect in their request doesn't matter because the notice of determination covers 1990-94 anyway.  This rests too heavily on what seems to have been a typo.  We have consistently held that if the IRS did not make a determination about a specific tax year under section 6330, "the absence of a determination is grounds for dismissal of a petition regarding such period."  Lister v. Commissioner, T.C. Memo. 2003-17; see also Offiler v. Commissioner, 114 T.C. 492, 498 (2000).

In this case, the notice of determination's summary and recommendation begins by stating "You requested a hearing with Appeals under the provisions of IRC § 6320 as to the appropriateness of a Notice of Federal Tax Lien."  It ends with "[t]he Notice of Federal Tax Lien is sustained."  There is nowhere a mention of the NIL for tax years 1990-94.

We therefore conclude that the Commissioner had no obligation to grant the Andres a CDP hearing and issue a

---

[3] There is one small category of premature requests which the Commissioner himself regards as valid--those made during the five-day period after a taxpayer is sent a NFTL, but before the 30-day period under section 6320 begins to run.  See sec. 301.6320-1(c)(2), Q&A-C3, Proced. & Admin. Regs.  He treats these premature requests, much like premature notices of appeal, as filed on the first day of the 30-day period.  The Andres' case does not fall into this category.

determination in response to their premature request challenging his collection action for the 1990-94 tax years.  We also conclude that the determination he did issue does not cover those earlier years.

An order granting respondent's motion to dismiss as to taxable years 1990-1996 will be issued.