T.C. Memo. 2016-77

UNITED STATES TAX COURT

SAMUEL S. YASGUR AND EVA A. YASGUR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20391-06L.                          Filed April 25, 2016.

Jared J. Scharf, for petitioners.

Alex Shlivko and Sheila Olaksen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge:  Pursuant to sections 6320(c) and 6330(d), petitioners

petitioned the Court to review a Decision Letter Concerning Equivalent Hearing

Under Section 6320 and/or 6330 of the Internal Revenue Code (decision letter)

[*2] issued by the Internal Revenue Service Office of Appeals (Appeals).[1]  The

decision letter sustained (1) respondent's filing of a notice of Federal tax lien as to

the unpaid portion of the 2003 Federal income tax petitioners reported as due on

their return and (2) respondent's proposed levy to collect that unpaid tax.

Petitioners challenge the decision letter to the extent that it relates to the filing of

the lien, for which they timely requested a hearing under section 6320 (section

6320 hearing) after receiving an August 16, 2005, Notice of Federal Tax Lien

Filing and Your Right to a Hearing Under IRC 6320.[2]  Petitioners' only challenge

to the filing of the lien notice is their contention that their underlying tax liability

for 2003 is less than respondent asserts.

---

[1]Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.

[2]The decision letter related to an "equivalent hearing" that Appeals held as to both the lien and the proposed levy.  Appeals concluded that petitioners were not entitled to a sec. 6320 hearing as to the lien because petitioners failed to timely request such a hearing.  Appeals also concluded that petitioners failed to timely request a hearing under sec. 6330 as to the proposed levy.  Respondent now asserts, and we agree, that petitioners' request for a sec. 6320 hearing was timely as to the lien.  We note that the lien notice was mailed on August 16, 2005, and petitioners' attorney requested a hearing concerning the lien in a letter dated August 24, 2005.  The decision letter, therefore, contains a determination with respect to the lien that may be reviewed by this Court.  See Craig v. Commissioner, 119 T.C. 252 (2002); cf. Wilson v. Commissioner, 131 T.C. 47 (2008) (holding that the Court lacked jurisdiction to review a decision resulting from an equivalent hearing); MacDonald v. Commissioner, T.C. Memo. 2009-63 (similar holding).

[*3]   The Court previously ordered that petitioner Eva A. Yasgur is precluded from challenging the existence or amount of her underlying tax liability for 2003 because she had a prior opportunity to do so.  See sec. 6330(c)(2)(B); Bell v. Commissioner, 126 T.C. 356 (2006).  We noted that Mrs. Yasgur received as to the liability an April 30, 2005, levy notice (i.e., Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing) and failed to avail herself of her right under section 6330 to timely request a hearing as to the levy notice to challenge the liability.  See generally sec. 6330(a) and (b).

We now decide whether petitioner Samuel S. Yasgur is precluded under section 6330(c)(2)(B) from challenging his underlying tax liability for 2003 because, as respondent contends, Mr. Yasgur either "received, was aware of, or deliberately failed to learn of" an April 30, 2005, levy notice issued to him as to the liability.  The Court held an evidentiary hearing on this matter, and we find that Mr. Yasgur neither received nor deliberately refused receipt of the levy notice mailed to him as to petitioners' 2003 Federal income tax liability.  Accordingly, we hold that Mr. Yasgur may challenge his underlying tax liability for 2003, and we will remand this case to Appeals to allow him to do so.

- 4 -

[*4]                         FINDINGS OF FACT

The parties submitted stipulated facts and exhibits, which we incorporate.

Petitioners are husband and wife, and they resided in New York when their petition

was filed.

Mr. Yasgur has practiced law for more than four decades following his

graduation from Cornell University and the University of Chicago School of Law.

At the time of the evidentiary hearing, he was the county attorney for the County of

Sullivan, New York.

Though married, petitioners ceased living together in 1998.  Mr. Yasgur

resided in Rock Hill, New York, and Mrs. Yasgur resided approximately 100 miles

away in petitioners' jointly owned house in Mamaroneck, New York (Mamaroneck

house).  After petitioners ceased living together, and throughout the period in issue,

they maintained a cordial but distant relationship, communicating only

sporadically.  They would often go months without communicating.

Petitioners continued to file joint returns after they established separate

residences, and they listed the address of the Mamaroneck house as their address

on their joint returns (Mamaroneck address).  The parties have stipulated that the

Mamaroneck address was each petitioner's last known address for all relevant

purposes.  Mrs. Yasgur generally forwarded to Mr. Yasgur the mail he received at

[*5] the Mamaroneck address, which consisted primarily of correspondence related to Federal and State taxes.  It was her practice to forward unopened any mail addressed to Mr. Yasgur individually and to open mail addressed to them jointly and to forward to Mr. Yasgur either the original or a copy.

On or about October 18, 2004, petitioners filed a joint Federal income tax return for 2003 (2003 return), reporting a tax liability of $88,801 and tax due of $60,801.  The $88,801 liability was attributable primarily to petitioners' reporting of certain passive income from Mr. Yasgur's interest in a law partnership.  The partnership had issued a Schedule K-1 (Form 1065), Partner's Share of Income, Credits, Deductions, etc., to Mr. Yasgur shortly before the extended due date of his 2003 return, which reported his share of the partnership's passive income in an amount that Mr. Yasgur believed was significantly overstated.  Mr. Yasgur's relationship with his partners had become acrimonious as of that time, and petitioners were unable to obtain from the partnership any documentation to support Mr. Yasgur's belief.  Upon the advice of their accountant/tax preparer, petitioners reported Mr. Yasgur's share of partnership income on their 2003 return consistently with the Schedule K-1, with the intention of subsequently filing an amended return when they had documentation to support Mr. Yasgur's claim of a lesser share.

[*6] Respondent timely assessed the $88,801 reported liability, and petitioners have not paid the $60,801 balance due (or any interest thereon). By January 2005 respondent's collection office in Holtsville, New York (Holtsville office), had notified petitioners by correspondence addressed to them jointly at the Mamaroneck address that they owed the reported unpaid tax. Mr. Yasgur promptly contacted the collection manager in the Holtsville office. Mr. Yasgur explained to the manager that petitioners believed that their 2003 return overreported their Federal income tax liability for that year and requested that respondent refrain from any further collection activity until such time as petitioners could file an amended return for 2003. The Holtsville manager suggested that the means available to petitioners to forestall collection actions would be to enter into an installment agreement. Mr. Yasgur informed Mrs. Yasgur of his discussions with the Holtsville collections manager. Those discussions extended at least through May 23, 2005, as reflected in a letter he sent to the manager on that date requesting additional time to execute the necessary forms for proposing an installment agreement.

Nonetheless, on April 30, 2005, respondent's Automated Collection System Support office in Bensalem, Pennsylvania, mailed separate notices of intent to levy (i.e., Letters 1058) to Mr. and Mrs. Yasgur by certified mail to the Mamaroneck

[*7] address. Mrs. Yasgur received notification of these two pieces of certified mail and on May 4, 2005, picked both up from the U.S. Post Office in Mamaroneck, New York. The certified mailings were sent with return receipt service. Mrs. Yasgur signed the return receipt for each mailing. A Form 4340, Certificate of Assessments, Payments, and Other Specified Matters,[3] for petitioners' 2003 taxable year records that respondent received two separate signed return receipts for certified mail on May 23, 2005. Mrs. Yasgur did not forward to Mr. Yasgur the notice of levy addressed to him, and neither petitioner requested a hearing with respect to the levy notices within 30 days of their mailing.

At some time before August 9, 2005, petitioners contacted an attorney, Jared J. Scharf (who represents them in this proceeding), regarding one or both of the notices of levy. On August 9, 2005, petitioners executed a power of attorney authorizing Mr. Scharf to represent them with respect to their 2003 income tax. On August 18, 2005, Mr. Scharf sent a letter to respondent requesting a hearing with respect to the levy notice mailed on April 30, 2005.[4]

_____

[3]The Form 4340 for petitioners' 2003 taxable year records that two notices of intent to levy were issued on April 30, 2005, and a certified mail list postmarked on the same date records separate certified mailings to Mr. and Mrs. Yasgur.

[4]The parties stipulated, and petitioners contend, that Mr. Scharf's August 18, 2005, letter requested a hearing with respect to a notice of lien mailed on August 16, 2005 (discussed infra). The letter on its face contradicts the stipulation. The

(continued...)

**[*8]**   On August 16, 2005, two days before Mr. Scharf requested a hearing with respect to the levy notice, an office of respondent in Cincinnati, Ohio, mailed a notice of lien filing (i.e., Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320) addressed to petitioners jointly at the Mamaroneck address.  On August 24, 2005, Mr. Scharf sent a letter to respondent requesting a hearing with respect to the notice of lien filing.

In late September 2005 petitioners submitted to respondent an amended Federal income tax return for 2003 on which they reported that their total tax for that year was $24,087 (rather than $88,801 as originally reported) and claimed a refund due of $3,913.

On or about October 13, 2005, Mr. Scharf submitted to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing, on behalf of petitioners in which he also requested a hearing with respect to both the levy and the lien notice.

---

⁴(...continued)
letter requests a hearing with respect to a notice of levy issued on April 30, 2005, and makes no mention whatsoever of the notice of lien.  We accordingly find as above, contrary to the stipulation.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195-196 (1989) (holding that the Court may disregard a stipulation that is clearly contrary to the evidence in the record); see also McLaulin v. Commissioner, 115 T.C. 255, 257 n.2 (2000) (same), aff'd, 276 F.3d 1269 (11th Cir. 2001).

**[\*9]** Petitioners' hearing request was assigned to an Appeals settlement officer who, having determined that their request for a hearing was untimely with respect to both the levy notice and the lien notice, provided them an "equivalent hearing" and issued a decision letter.[5] The decision letter determined, inter alia, that petitioners were not entitled to challenge the existence or amount of the underlying tax liability because they had a prior opportunity to "discuss" the tax liability.

OPINION

Mr. Yasgur contends that the determination by Appeals to sustain the lien notice filing was an abuse of discretion because he has no unpaid tax liability for 2003. It is respondent's position, however, that Mr. Yasgur's underlying tax liability for 2003 may not be disputed in this proceeding because he had a prior opportunity to dispute that liability and failed to do so.

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer after a demand for the taxes has been made and the taxpayer fails to pay those taxes. The lien arises when an assessment is made. See sec. 6322. The Secretary generally must file a notice of lien with certain State or local authorities where a taxpayer's property is situated for the lien to be valid

---

[5]As noted, it is now undisputed that the hearing request was timely with respect to the lien notice. We accordingly have jurisdiction to review the related determination embodied in the decision letter. See supra note 2.

[*10] against third parties. See sec. 6323(a), (f); Lindsay v. Commissioner, T.C. Memo. 2001-285, aff'd, 56 F. App'x 800 (9th Cir. 2003).

Section 6320 provides that the Secretary shall furnish the taxpayer with written notice of the filing of a notice of lien and of the taxpayer's right to a hearing with Appeals concerning the lien. See sec. 6320(a)(1), (3). If the taxpayer timely requests a hearing, the taxpayer generally may raise at the hearing "any relevant issue" relating to the unpaid tax or the lien. See secs. 6320(c), 6330(c)(2)(A). The taxpayer may challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency with respect to the liability or otherwise have an opportunity to dispute the liability. See sec. 6330(c)(2)(B). When such a challenge is allowed, it may cover amounts reported as due on the taxpayer's original return. See Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004).

The Secretary is authorized to collect a taxpayer's unpaid tax by levying upon the taxpayer's property or rights to property. Sec. 6331(a). However, such a levy generally requires that the Secretary first notify the taxpayer in writing of his right to a prelevy hearing with Appeals on the issue of whether the levy is appropriate. Sec. 6330(a)(1), (b)(1). Where the liability for the unpaid tax is joint and several because it arises from a joint return, the Secretary or his delegate must

[*11] send a separate notice to each spouse upon whose property the Commissioner intends to levy. See Moorhous v. Commissioner, 116 T.C. 263, 271 (2001). See generally Internal Revenue Manual pt. 8.22.2.2.4.9.1(4) (Dec. 14, 2010) ("Collection must issue separate * * * notices to husband and wife when the liabilities are joint."). A taxpayer is entitled to the hearing with Appeals so long as the taxpayer's request is made within 30 days of the day after the day that the notice was personally left at the taxpayer's dwelling or place of business, or sent by certified or registered mail, return receipt requested, to the taxpayer's last known address. Sec. 6330(a)(2); sec. 301.6330-1(c)(2), Q&A-C3, Proced. & Admin. Regs.; see also Andre v. Commissioner, 127 T.C. 68, 70 (2006).

Respondent argues that Mr. Yasgur had a prior opportunity to dispute his underlying tax liability because he could have requested a hearing with respect to the April 30, 2005, levy notice. Respondent contends that Mr. Yasgur either "received, was aware of, or deliberately failed to learn of" the levy notice. Respondent relies on section 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs., which precludes a taxpayer from challenging his or her underlying tax liability in a section 6320 hearing if the taxpayer previously received a notice of levy with respect to the same tax and tax period and did not request a hearing. See also Bell v. Commissioner, 126 T.C. at 358; Nichols v. Commissioner, T.C. Memo. 2007-5.

[*12] A similar preclusion may also apply where an individual did not receive a notice of levy because he or she deliberately refused to receive it. Cf. Sego v. Commissioner, 114 T.C. 604, 610-611 (2000) (holding that the taxpayer was precluded from challenging her underlying tax liability in a proceeding commenced under section 6330 because she deliberately refused receipt of a notice of deficiency that would have allowed her to challenge that liability earlier). Section 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs., has no preclusive effect where an individual neither actually received a notice of levy nor deliberately refused to receive the notice. See Downing v. Commissioner, T.C. Memo. 2007-291.

Respondent concedes that he has the burden of production to show that Mr. Yasgur received the notice of levy so that section 6330(c)(2)(B) and section 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs., would preclude Mr. Yasgur from challenging the underlying tax liability. Mr. Yasgur denies that he ever received a notice of levy addressed to him and contends that he only became aware of the notice of levy addressed to Mrs. Yasgur in early August 2005, well after the expiration of the 30-day period for requesting a hearing. Respondent relies upon the presumption of official regularity to establish receipt. Under that presumption, respondent's production of the certified mail list showing that two levy notices

**[\*13]** were sent by certified mail to the Mamaroneck address, and that one such notice was addressed to Mr. Yasgur and the other notice was addressed to Mrs. Yasgur, creates a strong presumption that the notices were mailed to that address, that they were delivered or offered for delivery there, and that they were actually received by the addressees.  See Sego v. Commissioner, 114 T.C. at 610-611; Zenco Eng'g Corp. v. Commissioner, 75 T.C. 318, 323 (1980), aff'd without published opinion, 673 F.2d 1332 (7th Cir. 1981); Casey v. Commissioner, T.C. Memo. 2009-131; see also Rosenthal v. Walker, 111 U.S. 185, 193-194 (1884); Estate of Wood v. Commissioner, 92 T.C. 793, 798-799 (1989), aff'd, 909 F.2d 1155 (8th Cir. 1990).

Respondent has proffered evidence sufficient to entitle him to a finding, on the basis of the presumption, that the levy notice issued to Mr. Yasgur was delivered to the Mamaroneck address.  The Form 4340 for petitioners' 2003 taxable year records that two separate notices of levy were issued on April 30, 2005, and the certified mail list postmarked on the same date records that separate certified mailings were made at that time to Mr. Yasgur and to Mrs. Yasgur. Further, the Form 4340 records that return receipts confirming that the certified mailings had been claimed were returned to respondent on May 23, 2005.

**[\*14]** Mrs. Yasgur's testimony confirms that two items of certified mail were claimed; she recalls going to the post office and claiming them.

Petitioners attempt to show irregularity in the foregoing on two grounds. First, they suggest that because the record includes two copies of the levy notice addressed to Mrs. Yasgur and no copy of the levy notice addressed to Mr. Yasgur, then it must be the case that the two certified mail envelopes claimed by Mrs. Yasgur each contained a notice of levy addressed to her. That contention is easily dismissed, as Mrs. Yasgur's levy notice on its face states that a copy of the notice is enclosed. Second, Mrs. Yasgur testified at trial that she recalls that she never received a levy notice addressed to Mr. Yasgur. However, in a previous sworn statement, Mrs. Yasgur stated that she did not recollect receiving a levy notice addressed to Mr. Yasgur. As the finder of fact, we are skeptical that recall improves over time. Having observed Mrs. Yasgur's demeanor, her claim at trial that she recalled not receiving a levy notice addressed to Mr. Yasgur, after having previously sworn that she could not recall receiving a levy notice addressed to him, is simply not reliable. We reject it and conclude instead that, at best, Mrs. Yasgur cannot recall whether a certified mailing she received was addressed to Mr. Yasgur.

[*15] Mrs. Yasgur's unreliable recollections are insufficient to rebut the presumption arising from respondent's records that a notice of levy addressed to Mr. Yasgur was delivered to the Mamaroneck address. See Sego v. Commissioner, 114 T.C. at 611. If Mr. Yasgur had been residing at the Mamaroneck address, and there were no other evidence bearing on this issue, that might well end the matter and entitle respondent to the further finding that Mr. Yasgur received the notice of levy mailed to him.

But the matter does not end here. There is other, significant evidence rebutting any presumption of receipt. Petitioners have established that beginning in 1998 through the period after the levy notice was mailed to Mr. Yasgur, he did not reside at the Mamaroneck address and communicated only infrequently with Mrs. Yasgur. Mr. Yasgur testified that he was unaware of any levy notice until early August 2005. Respondent contends that Mr. Yasgur was aware of the levy notice because Mrs. Yasgur would undoubtedly have told him about something so serious and significant affecting their financial circumstances.

We are not persuaded. When Mrs. Yasgur picked up the levy notices in early May 2005, she was aware (because Mr. Yasgur had advised her) that Mr. Yasgur had been in regular discussions with the Holtsville collections manager since at least January 2005 to resolve their 2003 Federal income tax liability.

[*16] Mrs. Yasgur had previously received other correspondence from the Internal Revenue Service (IRS) concerning the 2003 liability and had forwarded it to Mr. Yasgur or otherwise made him aware of it. We believe that Mrs. Yasgur plausibly could have believed that the levy notices concerned matters that Mr. Yasgur was already addressing with the Holtsville office and therefore misjudged their significance and the importance of notifying Mr. Yasgur of them.

In addition, Mr. Yasgur, an attorney, was generally punctilious and transparent in his dealings with the IRS. When he received a Schedule K-1 that he believed significantly overstated his share of partnership income, his course of action was nevertheless to report the income on his 2003 return and thereafter to seek documentation to support his claim of overstatement. Similarly, when the Holtsville office first sent correspondence indicating that it intended to collect the 2003 liability reported on the return, Mr. Yasgur promptly contacted the Holtsville collections manager and commenced discussions to address the matter (which were ongoing when the notice of levy was issued by another IRS office). This pattern of conduct, which is undisputed, is at odds with the contention that Mr. Yasgur received, or was aware of, the levy notice within the 30-day period to request a hearing and simply ignored it.

[*17] Finally, respondent argues alternatively that Mr. Yasgur "deliberately failed to learn of" the levy notice mailed to him. Respondent perceives a deliberate scheme wherein Mr. Yasgur arranged to have all IRS correspondence sent to the Mamaroneck address while residing elsewhere so that he could disclaim knowledge of any notice when it served his interests. Respondent thereby apparently seeks to bring these circumstances within the "deliberate refusal" line of cases where receipt of IRS correspondence is deemed to have occurred (notwithstanding the absence of actual receipt) when the evidence supports a finding that the taxpayer deliberately refused delivery. See, e.g., Sego v. Commissioner, 114 T.C. 604; Baxter v. Commissioner, T.C. Memo. 2001-300.

In Lehmann v. Commissioner, T.C. Memo. 2005-90, we suggested that a taxpayer who intentionally provided the Commissioner with an inaccurate address had deliberately refused a notice of deficiency mailed to that address, despite the notice's having been returned unclaimed to the Commissioner. We do not find that Mr. Yasgur engaged in any similar scheme to thwart receipt of IRS correspondence. He did not provide the Mamaroneck address to respondent in bad faith. He used the Mamaroneck address for Federal income tax purposes because Mrs. Yasgur still lived there and the couple continued to file joint returns. The Form 1040 used for filing jointly allowed entry of only one address. In addition,

[*18] Mr. Yasgur had no reason to suspect that a notice of levy would be mailed to him in April 2005. At the time, he was in active discussions with the Holtsville office concerning an installment agreement to cover the 2003 liability. Finally, that Mr. Yasgur was not attempting to thwart receipt is also seen in the fact that he did receive several IRS mailings sent to him at the Mamaroneck address, including the initial collection correspondence sent by the Holtsville office and the lien notice at issue.

Instead, Mr. Yasgur's circumstances are more akin to those of taxpayers who are not residing at their "last known address" when a notice is sent. See, e.g., Kuykendall v. Commissioner, 129 T.C. 77, 81-82 (2007); Smith v. Commissioner, T.C. Memo. 2008-229. Such taxpayers have not received a notice within the meaning of section 6330(c)(2)(B) or section 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs., nor have they deliberated refused receipt.

For the foregoing reasons, we find that Mr. Yasgur neither deliberately refused delivery nor "deliberately failed to learn of" the levy notice. Mrs. Yasgur neglected to forward it to him or to tell him about it until approximately three months later, but that is insufficient grounds to conclude that he should be deemed to have received it.

**[*19]** We accordingly hold that Mr. Yasgur is entitled to challenge his underlying tax liability for 2003, and we will remand this case to Appeals to allow him to do so. We have considered all arguments respondent made for a contrary holding and, to the extent not discussed, we have rejected those arguments as without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.