United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 9, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 05-60142

————————————————

GARBER INDUSTRIES, INC.,

                                        Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

                                        Respondent - Appellee.

--------------------

Appeal from a Decision
of the United States Tax Court

--------------------

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

    Petitioner Garber Industries Holding Co., Inc. appeals the

order of the Tax Court limiting the company's deduction of net

operating loss carryforwards and assessing a deficiency.  Because

we agree that the 1998 stock sale from Kenneth Garber to his

brother Charles Garber resulted in an "ownership change" to

Garber Industries under § 382 of the Internal Revenue Code, the

deduction of the loss carryforwards was properly limited and the

judgment of the Tax Court is affirmed.

I.

    Garber Industries Holding Co., Inc. ("Garber Industries")

was incorporated in December 1982. Charles M. Garber owned 3,492.85 shares (68%) of the stock and his brother Kenneth R. Garber owned 1,312 shares (26%). The remaining shares were owned by siblings, spouses or children of the two main shareholders. Garber Industries suffered operating losses from 1983 to 1989 and again in 1992. Under I.R.C. § 172 net operating losses ("NOLs") could be carried forward and deducted. At the end of 1997, the balance of NOL carryforwards was over twenty million dollars.

In July 1996, Garber Industries undertook a reorganization under I.R.C. § 368(a)(1)(D). As a result of the reorganization, Charles Garber's ownership interest decreased from 68% to 19% and Kenneth Garber's ownership interest increased from 26% to 65%. The remaining ownership of the company remained unchanged.

The critical transfer with respect to this case occurred in April 1998 when Kenneth Garber and his wife sold all of their shares of Garber Industries stock (65%) to Charles Garber. Charles Garber's ownership interest increased from 19% to 84%. No other Garber Industries' stock changed ownership in that year.

On its 1998 return, Garber Industries deducted a net operating loss carryover of $808,935. The IRS audited the taxpayer's 1997 and 1998 returns and determined that the company had undergone an ownership change under section 382 as a result of Kenneth's stock sale to Charles in 1998. Under the Internal Revenue Code, an ownership change limits the amount of NOL carryover that can be deducted. As applied to Garber Industries,

2

an ownership change would limit the NOL deduction to $121,258. In June 2001, the Commissioner issued a Notice of Deficiency resulting from the reduction in the amount of allowable deduction of net operating loss.

Garber Industries challenged the deficiency in the Tax Court. The parties settled all issues except those relating to the 1998 stock sale. It was agreed that if Kenneth's sale did not constitute an ownership change, the 1998 NOL carryover would be allowed in full and the tax deficiency for 1998 would be $5,070. The parties also agreed that if the sale did constitute an ownership change, the tax deficiency for 1998 would be $311,188. The Tax Court ruled in favor of the Commissioner and held that sale between the brothers did constitute an ownership change thus limiting the deductibility of the NOL carryforwards and creating a larger tax deficiency for Garber Industries. Garber Industries appeals.

## II.

The sole issue in this case is whether an ownership change occurred in relation to Garber Industries, as a result of the 1998 stock sale from Kenneth to Charles Garber, which triggers a limitation in the deduction of NOL carryforwards by the corporation under § 382 of the Internal Revenue Code. Whether an ownership change occurred depends on whether ownership of Kenneth's and Charles' Garber Industries stock can be aggregated

3

or attributed to each other under the ownership rules set forth in §§ 382 and 318.  If the brothers' stock can be aggregated or its ownership attributed to each other, then a sale between them does not cause an ownership change.

The purpose of section 382 is to prevent trafficking in net operating loss carryovers, which in the absence of a limitation may ordinarily be carried forward for 20 years.  The statute limits the use of NOL carryovers by the "new loss corporation" – the corporation possessing the losses after an ownership change.  26 U.S.C. § 382(a).  An ownership change occurs if, immediately after an "owner shift" or "equity structure shift," the percentage of stock owned by one or more shareholders owning 5% or more of the corporation ("5% shareholder") has increased by more than 50 percentage points over the lowest percentage of stock owned by such persons during the testing period.  26 U.S.C. § 382(g)(1), (k)(7).  The testing period is the three year period ending on the date of the owner shift or equity structure shift.  26 U.S.C. § 382(i).  An owner shift is any change in corporate ownership affecting the percentage of stock owned by a 5% shareholder.  26 U.S.C. § 382(g)(2).

Both Kenneth and Charles Garber were 5% shareholders.  In the absence of an exception or modification to the above rules, the 1998 stock sale from Kenneth to Charles clearly caused an owner shift or ownership change because the sale caused the

4

ownership of Charles Garber to increase by more than 50 percentage points (from 19% to 84%).

In some circumstances, § 382 allows stock owned by family members to be grouped together for purposes of determining whether an ownership change occurred.  To determine ownership of stock under § 382, the statute refers to the constructive ownership rules of § 318, with certain modifications.  Subsection (l)(3)(A) of section 382 states –

> (l) Certain additional operating rules. For purposes of this section--
>   (3) Operating rules relating to ownership of stock.
>     (A) Constructive ownership. Section 318 (relating to constructive ownership of stock) shall apply in determining ownership of stock, except that--
>       (i) paragraphs (1) and (5)(B) of section 318(a) shall not apply and an individual and all members of his family described in paragraph (1) of section 318(a) shall be treated as 1 individual for purposes of applying this section,

The relevant sections of 318 follow:

> a) General rule.  For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable--
>   (1) Members of family.
>     (A) In general. An individual shall be considered as owning the stock owned, directly or indirectly, by or for--
>       (i) his spouse (other than a spouse who is legally separated from the individual under a decree of divorce or separate maintenance), and
>       (ii) his children, grandchildren, and parents.
>     (B) Effect of adoption. For purposes of subparagraph (A)(ii), a legally adopted child of

5

an individual shall be treated as a child of such individual by blood.

Subsections (2), (3) and (4) of § 318 provide rules for attributing ownership to and from partnerships, estates, trusts and corporations and for dealing with stock options.

Subsection (5) bars double attribution of ownership from actual owner to family member and then from that family member to another.

> (5) Operating rules.
> . . . .
> (B) Members of family. Stock constructively owned by an individual by reason of the application of paragraph (1) shall not be considered as owned by him for purposes of again applying paragraph (1) in order to make another the constructive owner of such stock.

The plain language of these statutes supports the Tax Court's decision that the Garber Industries stock owned by Kenneth can not be attributed his brother Charles, or vice versa. Section 382(l)(3)(A) states that "an individual and all members of his family described in paragraph (1) of section 318(a) shall be treated as 1 individual for purposes of applying this section." The family members listed in paragraph (1) of section 318(a) are a person's "spouse", " his children, grandchildren, and parents." This list does not include siblings, which is the relationship between Charles and Kenneth Garber. Accordingly, the stock owned by each brother is not treated as owned by the other and the transaction between them as 5% shareholders

triggers an ownership change in the company.  We see nothing in the statute or argument of Garber Industries that persuades us that this simple reading of section 382 is not the correct one.

Garber Industries puts forward an alternative analysis that requires some background about the application of § 318.  The parties agree that if the attribution rules of § 318 are applied to the facts of this case without the modifications in §382, the stock of each brother would not be considered constructively owned by the other for two reasons.  First, section 318(a)(1)(A) does not include siblings in the list of family members whose stock is considered owned by other family members and, second, because § 318(a)(5)(B) bars double attribution – that is attribution from child to parent and then from parent to a sibling as would be required for the Garber brothers' stock to be aggregated together.  Garber Industries argues that when §382(1)(3)(A) removed the application of §318(a)(5)(B), double attribution is allowed.  Under this interpretation, the stock of Kenneth could be attributed to his parent and then to Charles so that the 1998 sale between them would not cause an ownership change.  We disagree.

We read subsection (l) of § 382 as having two parts that must be considered together in determining the operating rules for constructive ownership in the context of NOL carryforwards. First, the section states that "paragraphs (1) and (5)(B) of

7

section 318 (a) shall not apply."  This language has the effect

of removing the attribution rules of § 318 from the stock

ownership analysis.  Critically, it removes both subsection (1)[1],

which establishes the attribution scheme, and subsection (5)(B)[2],

which limits attribution between individuals to one step (no

double attribution).  The second clause of § 382(l)(3)(A)(i)

replaces the attribution rules of § 318(a)(1) and (a)(5)(B) with

a different method of grouping ownership among family members,

"an individual and all members of his family described in

paragraph (1) of section 318 (a) shall be treated as 1 individual

for purposes of applying this section."  We believe the flaw in

the taxpayer's argument is in focusing solely on the removal of §

---

[1]  Section 318(a)(1) reads as follows:
(1) Members of family.
    (A) In general. An individual shall be considered
    as owning the stock owned, directly or indirectly,
    by or for--
        (i) his spouse (other than a spouse who is
        legally separated from the individual under a
        decree of divorce or separate maintenance),
        and
        (ii) his children, grandchildren, and
        parents.

[2]  Section 318(a)(5)(B) reads as follows:
 (5) Operating rules.
 . . . .
    (B) Members of family. Stock constructively owned
    by an individual by reason of the application of
    paragraph (1) shall not be considered as owned by
    him for purposes of again applying paragraph (1)
    in order to make another the constructive owner of
    such stock.

8

318(a)(5)(B).  When we consider the removal of both subsections (1) and (5)(B) of section 318(a) with the second clause of section 382(l)(3)(A)(i), we read § 382 as totally replacing the attribution rules of § 318 with the family grouping model of §382.  Under this interpretation, when determining whether stock of family members can be aggregated under section 382, the only question is whether they are members of the same "family" as described by section 318 - an individual, his spouse, children and grandchildren.  There is nothing in the language of § 382 which suggests that the stock ownership of anyone outside the limited list of family members in § 318 can be treated as owned by those within the family group.

Garber Industries also suggests that § 382 can be read to allow ownership to be attributed to and from a parent without regard to whether the parent is also a shareholder of the loss corporation.  If this were allowed, a family group could be formed to aggregate the stock of Kenneth and Charles Garber around their common parent.  We agree with the Tax Court that the individual or individuals who form the basis for the ownership analysis must be shareholders of the loss corporation.  The whole point of section 382 is to identify ownership changes relative to 5% shareholders; a change of ownership by such a shareholder is the only change the statute addresses.  26 U.S.C. § 382(g)(1),

(g)(2) and (k)(7). An ownership change is defined in terms of owner shifts affecting 5% shareholders. 26 U.S.C. § 382(g). All stock owners who are less than 5% shareholders of the corporation are grouped and their stock is treated as owned by one 5% shareholder. Id. Accordingly, it follows that the "individual" referred to in the constructive ownership analysis provisions of § 382(l)(3)(A) must be a shareholder and that individual is the starting point for the formation of a family group consisting of that individual's spouse, parents, children and grandchildren.

III.

In summary, the Tax Court properly interpreted § 382 as applied to a sale of stock between two shareholder brothers, when no parent or grandparent was a shareholder of the loss corporation. Section 382, by incorporating the limited family description from § 318 - spouse, parents, children and grandchildren - limits the relatives of a shareholder whose stock can be aggregated with that of shareholder in question and clearly does not include siblings. The taxpayer's interpretation is too broad as it would allow almost unlimited attribution, in steps, among family members reaching much further than that limited group. The taxpayer's attempt to perform the aggregation analysis through a non-stockholder parent must also fail. The Tax Court's use of a shareholder of the loss corporation as the starting point for stock aggregation is consistent with the

10

nature of the analysis  under § 382, which looks for ownership shifts affecting 5% shareholders.  Applying these rules to the facts of this case, the stock of Kenneth and Charles Garber cannot be aggregated and the 1998 stock sale between them resulted in an ownership change affecting Garber Industries under section 382.

For the foregoing reasons, the judgment of the Tax Court is AFFIRMED.