128 T.C. No. 11

UNITED STATES TAX COURT

ROOSEVELT WALLACE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4637-03.                    Filed April 16, 2007.

       P participated in a compensated work therapy
program administered by the U.S. Department of Veterans
Affairs (VA) and, on account thereof, received a
distribution of $16,393 from the VA Special Therapeutic
and Rehabilitation Activities Fund.  R increased P's
gross income by that amount on the ground that the
distribution is a payment for services.  P claims that
the distribution is a tax-exempt veterans' benefit
pursuant to I.R.C. sec. 139(a)(3) and 38 U.S.C. sec.
5301 (2000).

       <u>Held</u>:  The distribution is a tax-exempt veterans'
benefit.

<u>Thomas Stylianos, Jr.</u>, for petitioner.

<u>Nina P. Ching</u>, for respondent.

OPINION

HALPERN, Judge:  Respondent determined a deficiency of $2,460 in petitioner's 2000 Federal income tax.  The sole issue for decision is whether $16,393 received by petitioner during 2000 in connection with his participation in a work therapy program administered by the U.S. Department of Veterans Affairs (VA) is includable in his gross income for 2000.  We hold that it is not.

Unless otherwise stated, all section references are to the Internal Revenue Code in effect for 2000.

## Background

### Introduction

This case was submitted for decision without trial pursuant to Rule 122, Tax Court Rules of Practice and Procedure.  Facts stipulated by the parties are so found.  The stipulation of facts filed by the parties, with attached exhibits, is included herein by this reference.

### Residence

At the time the petition was filed, petitioner resided in Lowell, Massachusetts.

### Participation in Compensated Work Therapy

During 2000, pursuant to a physician's prescription, petitioner participated in (and completed) a VA-administered therapeutic and rehabilitative work program.  As part of his

participation in that program, petitioner undertook compensated work therapy.  As part of that therapy, he was assigned to the Veterans Construction Team.  As a team member, he worked in the facilities department of Middlesex Community College, in Lowell, Massachusetts.  His work included sweeping floors and moving offices.  During 2000, petitioner received from the VA $16,393 for services he provided as a part of his compensated work therapy.

The Compensated Work Therapy Program

The VA administers therapeutic and rehabilitative activities under its Compensated Work Therapy (CWT) program (sometimes just the program).  Many aspects of the program are described in a staff manual, the CWT Veterans Employment Resources Staff Program Manual (the manual), prepared by staff at Edith Nourse Rogers Memorial Veterans Medical Center, Bedford, Massachusetts.  The following description of the program is drawn from the manual.

The program provides assistance to veterans unable to work and support themselves.  Many of the veterans in the program have histories of one or more conditions such as psychiatric illness, substance abuse, and homelessness.  Under the program, the VA provides a range of vocational rehabilitation services, with the degree of structure and level of support provided to the participating veteran geared to his or her needs.  The goal of the program is to assist participants in attaining independence

and vocational functioning as they return to the work environment.

The most structure and support is provided to participants at lower levels of psychosocial functioning, such as participants experiencing chronic physical or psychiatric disabilities that prevent them from sustaining regular employment. Those participants are given work within a workshop or other hospital-based setting and work between 4 and 30 hours a week at simple tasks.

Participants capable of working outside of a hospital, in community settings, such as Federal agencies and private businesses, but not prepared to take on full-time employment, or struggling with frequent substance abuse relapses, participate in a day labor pool, where work appropriate to the participants' levels of commitment and ability is provided.

Participants able to commit to continuous full-time community-based employment, and who demonstrate appropriate work ethics and behavior, can be assigned to a range of activities, such as administrative support, data entry, landscaping, accounting, and construction. A participant at this level interested in, or with experience in, the construction trades, may be assigned to the Veterans Construction Team. Members of the Veterans Construction Team are assigned to construction projects both inside and outside the VA hospital system.

Participants capable of transitioning to competitive employment are provided individual placement and support services that are necessary to obtain and keep competitively obtained employment.

The manual provides the following summary about what is therapeutic about compensated work therapy: "In sum, the social system that is inherent in the work-setting[] can be a major restorative feature that fosters the development of the relationships, work ethics, and skills needed to function optimally in society."

38 U.S.C. Section 1718 (2000)

The parties agree that, during 2000, the CWT program was operated pursuant to 38 U.S.C. section 1718 (2000) (when discussed, rather than cited, "section 1718", with all references to the year 2000). Title 38 of the United States Code (title 38) is concerned with veterans' benefits. Section 1718 is entitled "Therapeutic and rehabilitative activities". Among other things, section 1718 authorizes the Secretary to enter into contracts with third parties to provide therapeutic work for patients in VA health care facilities. 38 U.S.C. sec. 1718(b)(1) and (2). Section 1718(c)(1) establishes a fund, the "Department of Veterans Affairs Special Therapeutic and Rehabilitation Activities Fund" (VA Special Therapeutic and Rehabilitation Activities Fund), from which distributions are to be made to

patients for therapeutic work, "at rates not less than the wage rates specified in the Fair Labor Standards Act (29 U.S.C. 201 et seq.) and the regulations prescribed thereunder for work of similar character."  38 U.S.C. sec. 1718(c)(2).

Section 1718(f)(3) provides that, for purposes of 38 U.S.C. chapter 15, a distribution to a patient from the VA Special Therapeutic and Rehabilitation Activities Fund is to be considered a donation from a public or private relief or welfare organization.[1]

The complete text of section 1718 is set forth in an appendix to this report.

The Notice of Deficiency

The principal adjustment giving rise to the deficiency determined by respondent is his addition of $16,393 to the amount of gross income reported by petitioner for 2000.  That adjustment is explained as reflecting information reported by the VA to the Internal Revenue Service (IRS) on an IRS Form 1099-MISC.

---

[1]  Tit. 38 U.S.C. ch. 15 (2000) is concerned with certain pension benefits of veterans and their survivors.  Some of those pension benefits are reduced by the recipient's annual income. See, e.g., 38 U.S.C. secs. 1521(b) (veteran's annual income), 1541(b) (surviving spouse's annual income).  Tit. 38 U.S.C. sec. 1503(a) describes how "annual income" is determined for purposes of those limitations.  Paragraph (1) thereof provides that "donations from public or private relief or welfare organizations" are excluded in determining annual income.

## Discussion

### I. Introduction

The starting point in determining a taxpayer's Federal income tax liability for any taxable year is the computation of gross income. The term "gross income" is defined in section 61. Compensation for services is includable in gross income unless excluded by law. See sec. 61(a)(1); sec. 1.61-2(a)(1), Income Tax Regs. The parties have stipulated (and we have found accordingly) that, during 2000, petitioner received $16,393 for his services provided under a VA CWT program. Petitioner argues that the receipt is excluded by law from his gross income because it constitutes payment of a tax-exempt veterans' benefit. Respondent disagrees, arguing that it constitutes compensation for petitioner's services.

### II. Bases of Parties' Arguments

#### A. Petitioner's Argument

Petitioner relies on 38 U.S.C. section 5301(a) (2000). As stated, title 38 is concerned with veterans' benefits. Section 5301 thereof is entitled "Nonassignability and exempt status of benefits". In pertinent part, 38 U.S.C. section 5301(a) (2000) provides: "Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] * * * made to, or on account of, a beneficiary shall be exempt from taxation". That exemption is cross-referenced in the Internal

Revenue Code, section 139(a)(3), as an exemption from income with respect to veterans' benefits.

Petitioner also relies on Rev. Rul. 72-605, 1972-2 C.B. 35, wherein the Commissioner ruled with respect to the almost identical language in a predecessor version of 38 U.S.C. section 5301 (2000): "[P]ayments of benefits under any law administered by the Veterans' Administration are excludable from the gross income of a recipient under section 61 of the Code."

B. Respondent's Argument

Respondent does not dispute that petitioner participated in the CWT program for therapeutic reasons, or that, because he participated in the program, he received a distribution of $16,393 from of the VA Special Therapeutic and Rehabilitation Fund. Respondent argues that petitioner overstates his case when he argues that money is a benefit and, by that fact alone, is exempt from taxation to petitioner under the general exemption for veterans' benefits found in section 5301 of title 38. Respondent adds: "The monies paid to the petitioner for his participation in the program are unlike those payments made to taxpayers under legislatively-provided-social-welfare-benefit programs, which are excludable from gross income."

In support of that argument, respondent refers us to a set of his revenue rulings exemplifying payments excludable from gross income not pursuant to the provision of any statute but

pursuant to the Commissioner's policy to exclude from income most Government benefits and other welfare payments. That set of revenue rulings comprises Rev. Rul. 63-136, 1963-2 C.B. 19 (benefit payments made to individuals undergoing employment training or retraining under certain Federal acts dealing with unemployment and underemployment), Rev. Rul. 57-102, 1957-1 C.B. 26 (payments to the blind), Rev. Rul. 74-74, 1974-1 C.B. 18 (awards to crime victims and their dependents), Rev. Rul. 74-205, 1974-1 C.B. 21 (replacement housing payments to aid displaced individuals and their families), Rev. Rul. 75-271, 1975-2 C.B. 23 (assistance payments to lower income families enabling them to acquire homes), and Rev. Rul. 98-19, 1998-1 C.B. 840 (relocation payments made to flood victims).

Respondent distinguishes the payments addressed in those rulings from distributions made under the CWT program on the ground that a recipient must work in order to receive a distribution in the latter case. That, argues respondent, places the payment squarely within the definition of income found in section 61 and section 1.61-2(a)(1), Income Tax Regs.

Respondent also relies on Rev. Rul. 65-18, 1965-1 C.B. 32. That ruling addresses the inclusion in income of remuneration a patient or member receives for the work he performs for the Veterans' Administration under 38 U.S.C. section 618 (Supp. V,

1962), a predecessor provision to section 1718.[2]  It holds that the receipt is a payment for services rendered even though it is intended for therapeutic or rehabilitative purposes, and, because it is a payment for services, it is included in the recipient's gross income.

III.  Discussion

A.  Exemption

We are faced with a question of statutory construction. While section 61(a) states that the term "gross income" means "all income from whatever source derived", and specifically includes within that meaning "[c]ompensation for services", section 139(a)(3) exempts "[b]enefits under laws administered by the Veterans' Administration", and directs us to 38 U.S.C. section 5301 (2000).[3]  If the distribution petitioner received does in fact constitute a "benefit" payable under a law administered by the VA, then, by law, it is excludable from petitioner's gross income as a tax-exempt veterans' benefit. Because the parties are in agreement that: (1) petitioner

_____

[2]  The Veterans' Administration was redesignated the Department of Veterans Affairs by the Department of Veterans Affairs Act, Pub. L. 100-527, sec. 2, 102 Stat. 2635 (1988).  We shall use the initials "VA" to refer both to the Veterans' Administration and the Department of Veterans Affairs, the referent being determined by context.

[3]  We assume that Congress's failure to amend sec. 139(a)(3) to redesignate the Veterans' Administration the Department of Veterans Affairs is an oversight that is of no significance to this case.

participated in the CWT program, a veterans' program administered by the VA, and, on account thereof, (2) he received a distribution from the VA Special Therapeutic and Rehabilitation Activities Fund established pursuant to section 1718(c)(1) (sometimes, simply, the distribution), we are left only to determine whether the distribution constitutes a veterans' "benefit" within the meaning 38 U.S.C. section 5301(a) (2000).

B. Principles of Statutory Construction

As a general matter, if the language of a statute is unambiguous on its face, we apply the statute in accordance with its terms, without resort to extrinsic interpretive aids such as legislative history. E.g., Garber Indus. Holding Co. v. Commissioner, 124 T.C. 1 (2005), affd. 435 F.3d 555 (5th Cir. 2006). Accordingly, our initial inquiry is whether the language of 38 U.S.C. section 5301(a) is so plain as to permit only one reasonable interpretation insofar as the question presented in this case is concerned. See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). That threshold determination must be made with reference to the context in which such language appears. Id. at 341.

We also keep in mind that, when interpreting statutes relating to veterans, Federal veterans' benefit statutes are to be liberally construed for the benefit of a returning veteran, see Coffy v. Republic Steel Corp., 447 U.S. 191, 196 (1980), and

any interpretive doubt is to be resolved in the veteran's favor, e.g., <u>Natl. Org. of Veterans' Advocates, Inc. v. Secy. of VA</u>, 330 F.3d 1345, 1350 (Fed. Cir. 2003), so long as that interpretation does not override the clear meaning of a particular provision, e.g., <u>Disabled Am. Veterans v. Gober</u>, 234 F.3d 682, 692 (Fed. Cir. 2000).

C.  <u>Language of 38 U.S.C. Section 5301(a) (2000)</u>

With limited exceptions, section 5301(a) of title 38 (2000) exempts from taxation benefit payments made pursuant to any law administered by the VA.  One exception (inapplicable here) is that "the exemption * * * as to taxation [shall not] extend to any property purchased in part or wholly out of such payments." <u>Id.</u>  A second exception (also inapplicable here) exposes payments of veterans' benefits to levy for unpaid Federal taxes.  38 U.S.C. sec. 5301(d).  There are no other exceptions to the exemption from taxation, and title 38 (2000) contains no definition of the term "benefit" particular to the exemption. The text of 38 U.S.C. section 5301(a) (2000) is set forth in the margin.[4]

---

[4]  Sec. 5301(a) of title 38 (2000) reads in full:

Sec. 5301.  <u>Nonassignability and exempt status of benefits</u>

(a) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically

(continued...)

Since there is nothing on the face of 38 U.S.C. section 5301(a) (2000) that indicates that Congress intended the term "benefit" to have anything other than a common meaning, we consider dictionary definitions of the term to inform ourselves of the definition that Congress may have had in mind.  Excluding meanings that are obviously inappropriate (e.g., "an entertainment or social event"), Webster's Third New International Dictionary defines the term "benefit" as (1) "something that guards, aids, or promotes well being" or "useful aid", and (2) "PAYMENT, GIFT, as a : financial help in time of sickness, old age, or unemployment * * * c : a cash payment or service provided for under an annuity, pension plan, or insurance

---

[4](...continued)
authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.  The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments.  The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity.  For the purposes of this subsection, in any case where a payee of an educational assistance allowance has designated the address of an attorney-in-fact as the payee's address for the purpose of receiving a benefit check and has also executed a power of attorney giving the attorney-in-fact authority to negotiate such benefit check, such action shall be deemed to be an assignment and is prohibited.

policy".  Webster's Third New International Dictionary 204 (2002).

The relevant definitions in The American Heritage Dictionary of the English Language are similar, but with some variation in the second case, viz:  "(2) A payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program."  The American Heritage Dictionary of the English Language 168 (4th ed. 2000).

Both Merriam-Webster's Collegiate Dictionary and Merriam-Webster's Online Dictionary include the following definition:  "a service (as health insurance) or right (as to take vacation time) provided by an employer in addition to wages or salary".  Merriam-Webster's Collegiate Dictionary 114 (11th ed. 2003) and Merriam-Webster's Online Dictionary, http://aolsvc.merriam-webster.aol.com/mwwod-aol.htm (last visited Feb. 26, 2007).

Those definitions are instructive.  We conclude the following:  The term "benefit" is commonly understood to include things both tangible and intangible.  Independence and vocational functioning are among the intangible benefits intended for participants in the CWT program.  Although the term "benefit" is not synonymous with the term "payment", many payments are benefits, including payments that constitute items of gross income, e.g., fringe benefits, pensions and annuities.  See sec. 61(a)(1) (fringe benefits), (9) (annuities), (11) (pensions).

Whether payments for services are considered benefits appears an open question, though at least The American Heritage Dictionary of the English Language supports that view.  Dictionary definitions of the term "benefit" do not allow us to eliminate from the meaning of the term "payments received in connection with the performance of services" (as respondent implicitly argues).  We next look to see whether Congress understood the term "benefit" to include a payment of the sort at issue here.

D.  Context

While the titles of statutes and statutory headings cannot limit the plain meaning of statutory text, they are of some use for interpretative purposes when they shed some light on ambiguous words or phrases.  Bhd. of R.R. Trainmen v. B&O R.R. Co., 331 U.S. 519, 528-529 (1947).

Title 38 (2000) is entitled "VETERANS' BENEFITS".  Section 1718 falls within the following subdivisions of title 38:  part II, "GENERAL BENEFITS"; chapter 17, "HOSPITAL, NURSING HOME, DOMICILIARY, AND MEDICAL CARE"; and subchapter II, "HOSPITAL, NURSING HOME, OR DOMICILIARY CARE AND MEDICAL TREATMENT".  As stated, section 1718 is entitled "Therapeutic and rehabilitative activities".  As pertinent to the statutory hierarchy, section 1718 therapeutic work programs clearly fall within the ambit of medical benefits (medical care and medical treatment) provided to veterans.  Distributions from the VA Special Therapeutic and

Rehabilitation Activities Fund are nested within a series of provisions dealing with benefits. There is a canon of construction, noscitur a sociis (Latin: "it is known by its associates"), holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it. Black's Law Dictionary 1087 (8th ed. 2004); see also, e.g., Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961). While Congress has failed to tell us whether distributions from the VA Special Therapeutic and Rehabilitation Activities Fund are to be considered benefits, the placement of section 1718 in the midst of so many benefit provisions supports the inference that such distributions are to be considered benefits. Contextually, the distributions are benefits.

E. History of 38 U.S.C. Section 5301(a)

The history of a statute may be helpful in resolving ambiguities therein. E.g., Anderson v. Commissioner, 123 T.C. 219, 233 (2004), affd. 137 Fed. Appx. 373 (1st Cir. 2005).

Section 5301 (2000) of title 38 both limits the assignability of veterans' benefits and exempts those benefits from taxation. While the provision has deep roots,[5] its

---

[5] The tax exemption for VA benefits originated as an amendment to the Bureau of War Risk Insurance Act, which, beginning in 1917, provided certain benefits for members of the Armed Forces. See Act of Oct. 6, 1917, ch. 105, sec. 311, 40 Stat. 408. The initial amendment, which provided an exemption from tax for certain death and disability benefits, was later
(continued...)

legislative history is sparse.  What history there is recognizes two purposes:  to "'avoid the possibility of the Veterans' Administration * * * being placed in the position of a collection agency'" and to "'prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income.'"  Rose v. Rose, 481 U.S. 619, 630 (1987) (addressing the assignability limitations of the provision and quoting S. Rept. 94-1243, at 147-148 (1976), reprinted in 1976 U.S.C.C.A.N. 5241, 5369, 5370).  While the second of those purposes is somewhat helpful to petitioner, we do not believe that the legislative history of 38 U.S.C. section 5301 (2000) resolves the question before us.

We proceed to consider what we can determine about section 1718.  In comparison to the legislative history of 38 U.S.C.

---

[5](...continued)
enlarged to include all allotments and family allowances, compensation, and insurance payable under the Act.  See Act of June 25, 1918, ch. 104, sec. 2, 40 Stat. 609.  That exemption subsequently became sec. 22 of the World War Veterans' Act, 1924, ch. 320, 43 Stat. 607, 613, which consolidated several different veterans' benefits laws into a single statute.  Ch. 320, sec. 22, 43 Stat. 613, however, was repealed in 1935, and in its place Congress enacted a new statute providing a broad tax exemption for benefits payable "under any of the laws relating to veterans."  See Act of Aug. 12, 1935, ch. 510, sec. 3, 49 Stat. 609.  That provision was codified in 38 U.S.C. sec. 3101(a) (1958), the predecessor statute to 38 U.S.C. sec. 5301(a)(1) (2000).  See Manocchio v. Commissioner, 78 T.C. 989, 996 (1982) (setting forth the history of the exemption through its appearance in 38 U.S.C. sec. 3101(a) (1958)), affd. 710 F.2d 1400 (9th Cir. 1983).

section 5301 (2000), the legislative history of section 1718 is abundant.

F.  History of Section 1718

1.  Public Law 87-574

In 1991, 38 U.S.C. section 1718 was redesignated as such by Department of Veterans Affairs Codification Act, Pub. L. 102-83, section 5(a), 105 Stat. 406 (1991).  Prior to its redesignation, the section was 38 U.S.C. section 618.

Section 618 was added to title 38 by Act of Aug. 6, 1962, Pub. L. 87-574, section 2(1), 76 Stat. 308.  As so added, 38 U.S.C. section 618 is set forth in the margin.[6]  In pertinent part, it authorizes the Administrator of the VA to utilize the services of patients in VA hospitals for "therapeutic and rehabilitative purposes at nominal remuneration", but without giving them status as employees of the United States.

---

[6]  38 U.S.C. sec. 618 (Supp. V, 1962) provides:

Sec. 618.  Therapeutic and rehabilitative activities

   The Administrator, upon the recommendation of the Chief Medical Director, may utilize the services of patients and members in Veterans' Administration hospitals and domiciliaries for therapeutic and rehabilitative purposes, at nominal remuneration, and such patients and members shall not under these circumstances be held or considered as employees of the United States for any purpose.  The Administrator shall prescribe the condition for the utilization of such services.

S. Rept. 1693, 87th Cong., 2d Sess. (1962), reprinted at 1962 U.S.C.C.A.N. 2101, is the report of the Committee on Labor and Welfare that accompanied H.R. 8992, 87th Cong., 2d Sess. (1962), which, when enacted, became Pub. L. 87-574, and added 38 U.S.C. section 618.  The report states that the bill (H.R. 8992) was suggested and formally transmitted to the Congress by the VA. S. Rept. 1693, supra.  The report further states that the bill relates entirely to certain administrative provisions affecting the Department of Medicine and Surgery of the VA, and it describes the provision that would become 38 U.S.C. section 618 (Supp. V, 1962) as "specifically [authorizing] the use of the services of patients and members in Veterans' Administration hospitals and domiciliaries, for therapeutic and rehabilitative purposes, without conferring an employment status."  Id.

A communication from J.S. Gleason, Jr., Administrator of the VA, transmitting to the Senate a draft of a bill that became H.R. 8992, is contained in the report.  Id.  In pertinent part, Administrator Gleason states:

> There is an inconsistency between Federal employee status, with its statutory and regulatory requirements, and the basic concept of the member-employment program as a means toward the medical, psychological, and social rehabilitation of the veteran.  This inconsistency is highlighted by the fact that participants in the program are not eligible for such Federal employment benefits as retirement, insurance, or unemployment compensation, and yet they have been held to come within the purview of certain other statutory employee programs.

The proposed amendment would avoid confusion and controversy which has sometimes arisen in connection with the application to such persons of various statutes, regulations, or bills relating to Federal employees.  It would enable the Veterans' Administration to prescribe the conditions and benefits which will best serve the therapeutic and rehabilitative objectives of the program.

S. Rept. 1693, supra, 1962 U.S.C.C.A.N. at 2103 (emphasis added).

2.  Veterans Omnibus Health Care Act of 1976

Veterans Omnibus Health Care Act of 1976, Pub. L. 94-581, section 105(a)(3), 90 Stat. 2845, added to section 618 of title 38 provisions substantially the same as those in subsections (b) through (e) of section 1718.  S. Rept. 94-1206 (Part I) (1976), reprinted in 1976 U.S.C.C.A.N. 6355, is a portion of the report of the Committee on Veterans' Affairs that accompanied S. 2908, 94th Cong., 2d Sess. (1976), which, substantially in the form of H.R. 2735, 94th Cong., 2d Sess. (1976), was enacted as Pub. L. 94-581.

The report states that among the purposes of S. 2908 is the clarification of the VA's authority to enter into arrangements with private industry and nonprofit corporations to supply work projects for patient workers and to establish a revolving fund to receive and disburse funds in connection with such work.  S. Rept. 94-1206 (Part I), supra at 57, 1976 U.S.C.C.A.N. at 6357. The report refers to such work as being part of the VA's compensated work-therapy program and describes that program as being carried out under the VA's medical care authority and

having existed in some form in the VA since the late 1930s.  Id. at 113, 1976 U.S.C.C.A.N. at 6405.  The report distinguishes the CWT program from the incentive therapy (IT) program then authorized in 38 U.S.C. section 618 (in 2000, substantially, section 1718(a)).  The report distinguishes the two programs not on therapeutic and rehabilitative grounds but on the grounds that patients participating in the IT program are paid from appropriated funds and generally perform tasks of a custodial or clerical nature at administration health care facilities.  Id.

The report describes the operation of the CWT program as follows:  "VA patients perform work on the projects as a medically therapeutic activity, and are supervised by VA medical personnel.  Participating patients are paid from the proceeds of the contract."  Id.  Appended to the report is a report of the VA requested by the Committee on Veterans' Affairs on medical bills pending before the committee.  That report (the VA report) contains a section-by-section analysis of S. 2908, supra.  The VA Report explains in some detail the goals and value of the VA's therapeutic and rehabilitative work programs as medical treatment:

> The value of compensated work programs as a therapeutic modality is widely acknowledged.  They provide therapeutic (psychosocial and/or physical) rehabilitation of the participant.  Participation induces motivation, heightens self-esteem and breaks institutional patterns through the use of remunerative work with the expectation of either increasing the participant's potential for adjustment to the community, or preventing regression from present functional

level.  It reinforces through the use of well-established motivational principles ('rewards'), modifications or development of attitudes, habits, skills, and behaviors necessary to attain or maintain a maximum level of social and psychological adjustment.

S. Rept. 94-1206 (Part I), supra at 181, 1976 U.S.C.C.A.N. at 6472.

### 3.  Veterans' Benefits Improvement and Health-Care Authorization Act of 1986

Veterans' Benefits Improvement and Health-Care Authorization Act of 1986, Pub. L. 99-576, section 205, 100 Stat. 3256, amended 38 U.S.C. section 618 in response to a concern among veterans that payments for participation in incentive therapy and CWT programs were considered as income in determining eligibility for, or monthly rates of, non-service-connected disability pensions paid under chapter 15 of title 38.  See Senate/House Explanatory Statement of the Proposed Compromise Agreement on H.R. 5299, The Proposed Veterans' Benefits Improvement and Health Care Authorization Act of 1986, 132 Cong. Rec. 29451, 29453 (Oct. 8, 1986).  The amendments identified funds received by individuals as a result of their participation in therapeutic or rehabilitative activities carried out under 38 U.S.C. section 618 as "distributions" (in substitution for the terms "payments", "wages", or "remuneration") and provided that, for purposes of chapter 15 of title 38, those distributions be considered donations from public or private relief organizations, which, for purposes of former section 503(a)(1) of title 38, are not

considered income for pension purposes.  Id.  Those amendments
survive in section 1718.

4.  Discussion

Our examination of the history of section 1718 convinces us
that, while the VA expects a participant in the CWT program to
work, and in exchange for that work agrees to pay him a sum of
money, the point of the exchange is not to effect a market-driven
exchange of labor for value.  Indeed, a VA staff manual
describing the CWT program describes it as providing assistance
to veterans unable to work and support themselves.  The manual
further states that many of the veterans in the program have
histories of one or more conditions such as psychiatric illness,
substance abuse, and homelessness.  We need no authority for the
proposition that an employer does not normally engage an
individual to work in order to provide him with therapy or to
rehabilitate him.  That, however, is the point of the VA's work
therapy programs, as the VA Administrator, J.S. Gleason, Jr., is
quoted above as stating:  "[T]he basic concept of the member-
employment program [is] as a means toward the medical,
psychological, and social rehabilitation of the veteran".  S.
Rept. 1693, supra.  That point was understood in 1976 by the
Committee on Veterans Affairs, which, as set forth above, in
reporting favorably on S. 2908 (which established a statutory
basis for the CWT program), stated:  "VA patients perform work on

the projects as a medically therapeutic activity, and are supervised by VA medical personnel." The VA report, appended to the committee's report, describes the compensatory aspect of the CWT program as "[reinforcing] through the use of well-established motivational principles ('rewards'), modifications or development of attitudes, habits, skills, and behaviors necessary to attain or maintain a maximum level of social or psychological adjustment." S. Rept. 94-1206 (Part I), supra at 181, 1976 U.S.C.C.A.N. at 6472. We believe that, over the years, Congress has understood that the principal benefits to participants in VA therapeutic work programs are medical and not pecuniary. It is reasonable to assume that that understanding played a role in Congress's 1986 decision to recast payments made to participants in VA therapeutic work programs as "distributions" (and not "payments", "wages", or "remuneration") and to provide that those distributions not be considered income for certain pension purposes. See discussion of Veterans' Benefits Improvement and Health-Care Authorization Act of 1986 supra in section III.F.3. of this report.

While petitioner was compensated with a distribution from the VA Special Therapeutic and Rehabilitation Activities Fund for the services he rendered, we are inclined to conclude that distributions of that class are not simply payments for services rendered. There is a welfare (noncompensatory) aspect to them

that inclines us to classify them as benefits along with other payments, such as education, training, and subsistence allowances (including work-study allowances, see 38 U.S.C. sec. 3537), that are tax-exempt on account of 38 U.S.C. section 5301(a) (2000).[7] Before we reach a final conclusion, however, we look to additional interpretative guidance available to us.

G.  VA Op. Gen. Couns. Prec. 64-90

The VA is the agency charged with the interpretation and administration of laws pertaining to veterans' benefits.  The general counsel of the VA may issue a written legal opinion (a General Counsel Precedent Opinion) involving veterans' benefits under laws administered by the VA that is conclusive as to all VA officials and employees with respect to the matter at issue.[8]  VA

---

[7]  In IRS Pub. 525, Taxable and Nontaxable Income 14 (2006), the Service includes among a description of nontaxable veterans' benefits "[e]ducation, training, and subsistence allowances".

[8]  See 38 C.F.R. sec. 14.507(b), providing:

A written legal opinion of the General Counsel involving veterans' benefits under laws administered by the Department of Veterans Affairs which, in the judgment of the General Counsel or the Deputy General Counsel acting as or for the General Counsel, necessitates regulatory change, interprets a statute or regulation as a matter of first impression, clarifies or modifies a prior opinion, or is otherwise of significance beyond the matter at issue, may be designated a "precedent opinion" for purposes of such benefits.  Written legal opinions designated as precedent opinions under this section shall be considered by Department of Veterans Affairs to be subject to the provisions of 5 U.S.C. 552(a)(1).  An
(continued...)

Op. Gen. Couns. Prec. 64-90, 1990 WL 605252 (the opinion),

addresses the appropriateness of paying directly to incompetent

patients for whom guardians have been appointed the nominal

remuneration to which the patients are entitled for participating

in therapeutic and rehabilitative programs established pursuant

to 38 U.S.C. section 618 (the predecessor of section 1718).  The

opinion concludes that such direct payments are appropriate.  In

reaching that conclusion, the opinion considers the legislative

history of the Act of Aug. 6, 1962, Pub. L. 87-574, section 2(l),

76 Stat. 308, adding 38 U.S.C. section 618 ("legislation * * *

sponsored and enacted at the request of the VA").  The opinion

states:

> The words "nominal remuneration" as used in the
> statute are interpreted to mean a token grant of money
> in the nature of a "gratuity" or an "award," in an
> amount to be determined administratively, payable by
> the VA to the patient or member as a part of the
> expense of the therapeutic and rehabilitation program,
> as distinguished from "salary or wages" or "earnings"
> or an additional monetary "benefit" to the veteran.
> The language of section 618 makes it abundantly clear
> that payments thereunder are not intended as a
> consideration for the services rendered but rather as
> an inducement to selected patients and members to enter

---

[8](...continued)
opinion designated as a precedent opinion is binding on
Department officials and employees in subsequent
matters involving a legal issue decided in the
precedent opinion, unless there has been a material
change in a controlling statute or regulation or the
opinion has been overruled or modified by a subsequent
precedent opinion or judicial decision.

> into activities which will assist them in regaining
> self-reliance and aid in their return to normal life.
> In other words, such payments are merely one more
> "tool" available to the professional personnel of DM &
> S for use in the treatment of patients and members.
> Payments under section 618 are an expense for medical
> care and are chargeable to appropriations for the
> medical care program. They do not fall within the
> category of benefits otherwise payable to a guardian.

VA Op. Gen. Couns. Prec. 64-90, supra (emphasis added).

Veterans Omnibus Health Care Act of 1976, Pub. L. 94-581, section 105(a)(3), 90 Stat. 2845, replaced the provision calling for the payment of nominal remuneration with one calling for payments at rates not less than specified in the Fair Labor Standards Act of 1938 (29 U.S.C. section 201, et seq.). We have found no indication that, by that change, Congress intended to change the nature of the payment as a gratuity or award, and, indeed, in the ruling, the VA General Counsel took no notice of that change in 1990.

The VA General Counsel's convictions that patients are not being recompensed for services and the payments to them are an expense for medical care reinforces our conclusion that distributions from the VA Special Therapeutic and Rehabilitation Activities Fund are not merely payments for services rendered.

H.  Respondent's Arguments

Respondent distinguishes payments made to taxpayers under legislatively-provided-social-welfare-benefit programs (which respondent has ruled are excludable from income) from

distributions from the VA Special Therapeutic and Rehabilitation Fund on the ground that a recipient must work in order to receive a distribution in the later case. Payments for work, argues respondent, are squarely within the definition of gross income found in section 61 and section 1.61-2(a)(1), Income Tax Regs.

While it is true that the definition of gross income includes payments for work, see sec. 61(a)(1), respondent's argument ignores the introductory language of section 61(a)(1): "Except as otherwise provided in this subtitle". Indeed, section 61(a)(11) includes pensions as an item of gross income. Section 139(a)(3), however, directs us to 38 U.S.C. section 5301 for an exemption for benefits under laws administered by the VA. Respondent has acknowledged that veterans' pensions are excludable from gross income as a veterans' benefit. Rev. Rul. 72-605, 1972-2 C.B. 35. The fact that a distribution from the VA Special Therapeutic and Rehabilitation Fund may fit the description of an item normally classified as an item of gross income does not necessarily mean that the distribution is an item of gross income for which no exemption is afforded by section 139(a)(3) and 38 U.S.C. section 5301 (2000).

Respondent relies specifically on Rev. Rul. 65-18, 1965-1 C.B. 32, which addresses the inclusion in income of remuneration a patient or member receives for the work he performs for the VA under 38 U.S.C. section 618 (Supp. V, 1962), a predecessor

provision to section 1718. It holds that the receipt is a payment for services rendered even though it is intended for therapeutic or rehabilitative services, and, because it is a payment for services, it is included in the recipient's gross income. Revenue rulings are generally not accorded deference by the Court. E.g., McLaulin v. Commissioner, 115 T.C. 255, 263 (2000), affd. 276 F.3d 1269 (11th Cir. 2001). We may, however, take a revenue ruling into account where we judge the underlying rationale to be sound. Id. We do not judge that to be the case here.

Rev. Rul. 65-18, supra, appears to have been issued in response to the addition of section 618 to title 38 by the Act of Aug. 6, 1962, section 2(1), 76 Stat. 308 (discussed supra in section III.F.1 of this report). The ruling acknowledges Congress's purpose, as set out in S. Rept. 1693, 87th Cong., 2d Sess. (1962), of avoiding confusion and controversy with respect to the Federal employee status of patients participating in a therapeutic program and states that the law enables the VA to prescribe the "conditions and benefits" that will best serve the therapeutic and rehabilitative objectives of the program. Rev. Rul. 65-18, 1965-1 C.B. at 33. The ruling gives no consideration to the question of whether the remuneration in question constitutes an exempt veterans' benefit within the meaning of the applicable predecessors of section 139(a)(3) and 38 U.S.C.

section 5301(a) (2000); i.e., section 122(a)(4) (1965) of the Internal Revenue Code of 1954 and 38 U.S.C. section 3101 (1964), respectively.  Indeed, there is no mention of those provisions or of respondent's acknowledgment of the blanket exemption from taxation of all veterans' benefits contained in Mim. 4411, XV-1 C.B. 497 (1936) (superseded and reacknowledged in Rev. Rul. 72-605, 1972-2 C.B. 35).  Lacking any consideration of the exemption for veterans' benefits, the analysis of the ruling is neither complete nor persuasive.

Finally, respondent argues that, since Congress has amended what is now 38 U.S.C. section 1718 numerous times since the Commissioner issued Rev. Rul. 65-18, supra, it must have approved of the conclusion the Commissioner there reached.  A revenue ruling incorporating a long-standing administrative practice sanctioned by the Congress or the Courts may acquire the force of law.  Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1070 (1989).  Nevertheless, we reject respondent's argument for the reasons expressed in Ashland Oil, Inc. v. Commissioner, 95 T.C. 348, 363 (1990):

> Respondent has not, however, shown that Congress has been even aware of this administrative interpretation, which has not been litigated in a reported decision and has been cited in only a smattering of private letter rulings.  Without affirmative indications of congressional awareness and consideration, we decline to cloak this revenue ruling with the aura of legislative approval.  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Interstate Drop Forge Co. v. Commissioner, 326 F.2d 743, 746 (7th Cir.

1964), affg. a Memorandum Opinion of this Court; <u>Sims v. United States</u>, 252 F.2d 434, 438-439 (4th Cir. 1958), affd. 359 U.S. 108 (1959).

I.  <u>Conclusion</u>

Taking into account the liberal construction that we are to apply in construing veterans' benefit statutes and the extrinsic sources that we have considered, we conclude that the distribution in question, a distribution from the VA Special Therapeutic and Rehabilitation Activities Fund, constitutes the payment of a benefit within the meaning of 38 U.S.C. section 5301(a) (2000).

Distributions from VA Special Therapeutic and Rehabilitation Activities Fund do not resemble common labor for value exchanges. In our statement of the background of this case, we noted that petitioner participated in the CWT program pursuant to a prescription from a physician.  We set forth provisions of the staff manual governing the program providing that (1) the program provides assistance to veterans unable to work and support themselves; (2) many of the veterans in the program have histories of one or more of psychiatric illness, substance abuse, and homelessness; and (3) the goal of the program is to assist participants in attaining independence and vocational functioning as they return to the work environment.  Indeed, section 1718 is included in title 38, among the provisions for medical benefits. Moreover, the history of section 1718 and the analysis contained

in VA Op. Gen. Couns. Prec. 64-90, supra, convince us that both Congress and the VA understood that distributions from the fund were not a quid pro quo for labor. In VA Op. Gen. Couns. Prec. 64-90, supra, the general counsel classifies distributions from the fund as an expense for medical care, chargeable to appropriations for the VA medical care program. Distributions from the fund constitute payments of benefits. Because the distribution here in question constitutes a veterans' benefit payable under a law administered by the VA, it is exempt from taxation under section 38 U.S.C. section 5301(a) (2000) and section 139(a)(3).

IV. Conclusion

To reflect the foregoing,

Decision will be entered

for petitioner.

APPENDIX

38 U.S.C. Section 1718 (2000):

Section 1718.   Therapeutic and rehabilitative
                activities

(a) In providing rehabilitative services under this chapter, the Secretary, upon the recommendation of the Under Secretary for Health, may use the services of patients and members in Department health care facilities for therapeutic and rehabilitative purposes. Such patients and members shall not under these circumstances be held or considered as employees of the United States for any purpose.  The Secretary shall prescribe the conditions for the use of such services.

(b)(1) In furnishing rehabilitative services under this chapter, the Secretary, upon the recommendation of the Under Secretary for Health, may enter into a contract or other arrangement with any appropriate source (whether or not an element of the Department of Veterans Affairs or of any other Federal entity) to provide for therapeutic work for patients and members in Department health care facilities.

(2) Notwithstanding any other provision of law, the Secretary may also furnish rehabilitative services under this subsection through contractual arrangements with nonprofit entities to provide for such therapeutic work for such patients. The Secretary shall establish appropriate fiscal, accounting, management, recordkeeping, and reporting requirements with respect to the activities of any such nonprofit entity in connection with such contractual arrangements.

(c)(1) There is hereby established in the Treasury of the United States a revolving fund known as the Department of Veterans Affairs Special Therapeutic and Rehabilitation Activities Fund (hereinafter in this section referred to as the "fund") for the purpose of furnishing rehabilitative services authorized in subsection (b) of this section.  Such amounts of the fund as the Secretary may determine to be necessary to establish and maintain operating accounts for the various rehabilitative services activities may be deposited in checking accounts in other depositaries selected or established by the Secretary.

(2) All funds received by the Department under contractual arrangements made under subsection (b) of this section, or by nonprofit entities described in paragraph (2) of such subsection, shall be deposited in or credited to the fund, and the Secretary shall distribute out of the fund moneys to participants at rates not less than the wage rates specified in the Fair Labor Standards Act (29 U.S.C. 201 et seq.) and regulations prescribed thereunder for work of similar character.

(3) The Under Secretary for Health shall prepare, for inclusion in the annual report submitted to Congress under section 529 of this title, a description of the scope and achievements of activities carried out under this section (including pertinent data regarding productivity and rates of distribution) during the prior twelve months and an estimate of the needs of the program of therapeutic and rehabilitation activities to be carried out under this section for the ensuing fiscal year.

(d) In providing rehabilitative services under this chapter, the Secretary shall take appropriate action to make it possible for the patient to take maximum advantage of any benefits to which such patient is entitled under chapter 31, 34, or 35 of this title, and, if the patient is still receiving treatment of a prolonged nature under this chapter, the provision of rehabilitative services under this chapter shall be continued during, and coordinated with, the pursuit of education and training under such chapter 31, 34, or 35.

(e) The Secretary shall prescribe regulations to ensure that the priorities set forth in section 1705 of this title shall be applied, insofar as practicable, to participation in therapeutic and rehabilitation activities carried out under this section.

(f)(1) The Secretary may not consider any of the matters stated in paragraph (2) as a basis for the denial or discontinuance of a rating of total disability for purposes of compensation or pension based on the veteran's inability to secure or follow a substantially gainful occupation as a result of disability.

(2) Paragraph (1) applies to the following:

(A) A veteran's participation in an activity carried out under this section.

(B) A veteran's receipt of a distribution as a result of participation in an activity carried out under this section.

(C) A veteran's participation in a program of rehabilitative services that (i) is provided as part of the veteran's care furnished by a State home and (ii) is approved by the Secretary as conforming appropriately to standards for activities carried out under this section.

(D) A veteran's receipt of payment as a result of participation in a program described in subparagraph (C).

(3) A distribution of funds made under this section and a payment made to a veteran under a program of rehabilitative services described in paragraph (2)(C) shall be considered for the purposes of chapter 15 of this title to be a donation from a public or private relief or welfare organization.