T.C. Summary Opinion 2015-72

UNITED STATES TAX COURT

DALE MARTIN SANA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29246-13S.                    Filed December 2, 2015.

Dale Martin Sana, pro se.

<u>Robert M. Romashko</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $3,585 in petitioner's Federal income tax for 2011. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in Illinois.

The sole issue for decision is whether petitioner may exclude from gross income $13,505 of retirement pay that he received from the Defense Finance and Accounting Service (DFAS) in 2011. To the extent not discussed herein, other issues are computational and flow from our decision in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

I. Petitioner's Military Service and Disability Retirement

Petitioner attended Lewis University where he received a bachelor's degree in aviation maintenance and management in 1985. In the fall of 1985 petitioner

---

[1](...continued)
Code, as amended and in effect for 2011, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

enlisted in the U.S. Navy, and he was commissioned as an officer in March 1986. After receiving primary flight training in Corpus Christi, Texas, he was transferred to Pensacola, Florida, for helicopter flight training.

In June 1987 petitioner suffered a serious injury to his left knee in a waterskiing accident. Over the years that followed he had numerous surgeries to repair damaged bone, nerves, and ligaments and received extensive physical therapy and rehabilitation treatment.

Effective June 15, 1991, the Navy discharged petitioner from active duty, placed him on its temporary disability retirement list, and assigned him a 40% disability rating. Petitioner worked as a construction laborer while he was on the Navy's temporary disability retirement list.

In February 1993 the Navy's Physical Examination Board determined that petitioner's disabling condition made him unfit for further duty, that he was 30% disabled, and that he would be permanently retired in accordance with the provisions of 10 U.S.C. sec. 1210 (2012). Thereafter, petitioner received monthly retirement pay equal to his base pay multiplied by his disability rating of 30%. See id. sec. 1401.

Petitioner testified that he continued to have knee pain after retiring from the Navy and that he eventually elected to have knee replacement surgery in 2009.

Petitioner acknowledged at trial that he has never submitted to a medical examination at a Department of Veterans Affairs (VA) facility nor received a disability rating from the VA. The record does not include any medical records or other documents related to the knee replacement surgery that petitioner referred to or his physical condition in 2011.

## II. Tax Reporting

DFAS reported on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that petitioner received taxable retirement pay of $13,505 in 2011. Petitioner timely filed a Federal income tax return for 2011. Although he reported that he received wages of $88,095 from Grubb & Ellis Management Services in 2011, he did not include his military retirement pay as an item of gross income.[2]

## III. The Parties' Positions

Respondent issued to petitioner a notice of deficiency for 2011 determining that his military retirement pay must be included as an item of gross income. Respondent asserts that petitioner's military retirement pay is not excludable from

---

[2]The record reflects that petitioner's filing status for the year in issue was married filing separate.

gross income under section 104(a)(4) because he failed to show the amount, if any, that he would be entitled to receive as disability compensation from the VA.

Petitioner filed a petition for redetermination with the Court asserting that his military retirement pay is excludable from gross income under section 104(a)(4) because he is certain that his knee injury would entitle him to an award of VA disability benefits within the meaning of section 104(b). He further asserts that excluding his retirement pay from gross income is consistent with instructions contained in Internal Revenue Service (IRS) Publication 525, Taxable and Nontaxable Income.

## Discussion

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer normally bears the burden of proving those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should be shifted to respondent under section 7491(a), and there is no support in the record for doing so.[3] It follows that petitioner bears the burden of proof in this case.

---

[3]It is worth noting that petitioner does not dispute that he received retirement pay of $13,505 from DFAS.

Section 61(a) provides that gross income means "all income from whatever source derived". Pensions and retirement allowances constitute gross income unless excluded by law. Sec. 61(a)(11); sec. 1.61-11(a), Income Tax Regs. Military retirement pay is pension income within the meaning of section 61(a)(11). Wheeler v. Commissioner, 127 T.C. 200, 205 n.11 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

It is well established that statutory exclusions from income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Taxpayers seeking an exclusion from income must demonstrate that they are eligible for the exclusion and "bring themselves within the clear scope of the exclusion." Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998).

I. Limited Exclusion of Military Retirement Pay From Gross Income

Section 104(a)(4) provides the general rule that amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country are not included in gross income.[4] Section 104(b)(1) and (2)(D), however, limits the exclusion prescribed in subsection (a)(4), as relevant here, to an individual who "on application therefor

---

[4]Although there is no dispute that petitioner injured his knee in a waterskiing accident, respondent does not assert that petitioner's injury did not result from "active service in the armed forces".

* * * would be entitled to receive disability compensation from the Veterans'
Administration."[5]  Section 104(b)(4) further provides that if an individual is
described in subsection (b)(2), the amount excludable from gross income under
subsection (a)(4) for any period "shall not be less than the maximum amount
which such individual, on application therefor, would be entitled to receive as
disability compensation from the Veterans' Administration."[6]

The restrictions imposed in section 104(b) are better understood in the light
of the legislative history underlying the Tax Reform Act of 1976, Pub. L. No. 94-
455, sec. 505(b), 90 Stat. at 1567.  At that time Congress recognized that the

---

[5]With limited exceptions, benefits administered by the VA have long been
exempt from taxation.  See 38 U.S.C. sec. 3101(a) (1958) (the predecessor to 38
U.S.C. sec. 5301(a)(1) (2012)); Wallace v. Commissioner, 128 T.C. 132, 141 n.5
(2007).

[6]In Reimels v. Commissioner, 123 T.C. 245, 257 (2004), aff'd, 436 F.3d 344
(2d Cir. 2006), we stated in relevant part:

[A]lthough section 104(b)(4) is not a model of clarity, its legislative
history suggests that it was intended to apply with respect to retired
military personnel who do not receive the Veterans' Administration
benefits to which they are otherwise entitled.  In certain circum-
stances, section 104(b)(4) provides such persons with a tax benefit at
least as great as the tax exemption that would have been available for
the forgone Veterans' Administration benefits.

exclusion from gross income prescribed in section 104(a)(4) invited taxpayer

abuse, which it described in relevant part as follows:

> Criticism of the exclusion of armed forces disability pensions from income focuses on a number of cases involving the disability retirement of military personnel. In many cases, armed forces personnel have been classified as disabled for military service shortly before they would have become eligible for retirement principally to obtain the benefits of the special tax exclusion on the disability portion of their retirement pay. In most of these cases the individuals, having retired from the military, earn income from other employment while receiving tax-free 'disability' payments from the military. The committee questions the equity of allowing retired military personnel to exclude the payments which they receive as tax-exempt disability income when they are able to earn substantial amounts of income from civilian work, despite disabilities such as high blood pressure, arthritis, etc.

> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

> The committee amendment eliminates the exclusion of disability payments from income for those covered under section 104(a)(4), that is, members of the armed forces of any country, NOAA, the Public Health Service and the Foreign Service. This change applies only prospectively to persons who join these government services after September 24, 1975. Specific exceptions continue the exclusion in certain cases for future disability payments for injuries and sickness resulting from active service in the armed forces of the United States.

> At all times, Veterans' Administration disability payments will continue to be excluded from gross income. In addition, even if a future serviceman who retires does not receive his disability benefits from the Veterans' Administration, he will still be allowed to exclude from his gross income an amount equal to the benefits he could receive from the Veterans' Administration. Otherwise, future

members of the armed forces will be allowed to exclude military disability retirement payments from their gross income only if the payments are directly related to "combat injuries." * * *

S. Rept. No. 94-938, at 138-139 (1976), 1976-3 C.B. (Vol. 3) 49, 176-177; see

Kiourtsis v. Commissioner, T.C. Memo. 1996-534.

II.  Disability Ratings for Members of the Armed Forces

A.  Statutory Provisions--Title 10

At all times relevant to this case, 10 U.S.C. ch. 61 established the standards and processes by which the Armed Forces (including the Navy)[7] determine whether a service member may be retired or separated from service because of a medical disability.  A service member with a disability who otherwise would be entitled to retire permanently under the provisions of 10 U.S.C. sec. 1201 (2012), but whose disability is not determined to be permanent and stable, is eligible to be placed in temporary disability retirement status.  See id. sec. 1202.  A service member in temporary disability retirement status must submit to periodic physical examinations, and a determination whether a particular disability is permanent and stable must be made within five years.  See id. sec. 1210(a) and (b).

---

[7]The U.S. Navy is a military service and a branch of the Armed Forces of the United States.  See 10 U.S.C. sec. 101(a)(4) (2012).

A service member with a permanent and stable physical disability who is found to be unfit for further duty is eligible to receive retirement pay if the member has at least 20 years of service or his disability is rated at least 30% under the VA standard schedule of rating disabilities (VASRD). See id. sec. 1201.[8] Disability retirement pay is computed as the higher of (1) the service member's base pay multiplied by 2.5% for each year of military service or (2) the service member's base pay multiplied by his disability rating (in this case 30%). See id. sec. 1401.

B.  Statutory Provisions--Title 38

The United States will compensate a veteran of the armed forces for a disability resulting from personal injury suffered or disease contracted in the line of duty and in active service if the veteran was discharged or released under conditions other than dishonorable and if the disability is not the result of the veteran's own willful misconduct or abuse of alcohol or drugs. See 38 U.S.C. secs. 1110, 1131 (2012). In this regard the VA is authorized to adopt a schedule of ratings of reductions in earning capacity from specific injuries based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. See id. sec. 1155 (providing in pertinent part that the

---

[8]The VASRD is set forth at 38 C.F.R. pt. 4 (2012).

VASRD shall be constructed so as to provide only 10 grades of disability, e.g., 10%, 20%, and so on, upon which payments of compensation shall be based).

By way of example, the VARSD provides the following disability ratings in respect of an individual who has had knee replacement surgery:

5055  Knee replacement (prosthesis).

Prosthetic replacement of knee joint:
    For 1 year following implantation of prosthesis . . . . . . . . 100

    With chronic residuals consisting of severe painful
    motion or weakness in the affected extremity . . . . . . . . . . 60

    With intermediate degrees of residual weakness,
    pain or limitation of motion rate by analogy to
    diagnostic codes 5256, 5261, or 5262.  Minimum rating . . 30

See 38 C.F.R. sec. 4.71a (2012).

Monthly compensation amounts for each of the VA's 10 grades of disability are fixed by statute.  See 38 U.S.C. secs. 1114, 1134 (2012).  Compensation amounts increase if the disabled service member has a spouse and/or dependents. See Dept. of Veterans Affairs, Veterans Benefits Administration, Compensation Rate Table (Dec. 1, 2009), http://www.benefits.va.gov/compensation/resources_ comp0109.asp.

III. <u>Whether Petitioner Is Entitled to VA Disability Benefits</u>

When the Navy determined that petitioner was permanently disabled and unfit for further duty, he did not have the 20 years of service needed to qualify for a disability retirement. The Navy concluded, however, that he was entitled to a disability retirement (and the payments that go with that status) because his VASRD disability rating equaled 30%. <u>See</u> 10 U.S.C. sec. 1201.

As discussed above, section 104(b)(2) limits the exclusion from gross income for disability payments to individuals who, upon application, would be entitled to receive disability compensation from the VA. Section 104(b)(4) provides that the amount excluded under subsection (a)(4) will not be less than the maximum amount which the individual would be entitled to receive as disability compensation from the VA. The instructions in IRS Publication 525 that petitioner cited in his petition merely track the statute.

Although the Navy and the VA apply the same rating standards--the VASRD-- the Navy and the VA approach the question of disability ratings from different perspectives. Whereas the Navy focuses on whether a service member is able to perform his or her miliary duties at a given time, the VA rates disabilities by weighing the impact of an injury or illness on a veteran's earning capacity in a civil occupation over his or her lifetime. <u>Stine v. United States</u>, 92 Fed. Cl. 776,

795 (2010) ("[A] rating disparity between the two systems is not unusual because of the differing standards that must be applied."), aff'd, 417 F. App'x 979 (Fed. Cir. 2011); see Lockwood v. United States, 90 Fed. Cl. 210, 219 (2008) ("Both the Department of Veterans Affairs and the military service branches rely on the * * * (VASRD), however, they do so in different ways."); see also Cleary v. Commissioner, 60 T.C. 133, 140 n.10 (1973) ("'[T]he basis for * * * [VA] action is different from the basis upon which a retiring board determines whether or not an officer is entitled to retirement for physical disability[.]'" (quoting Furlong v. United States, 153 Ct. Cl. 557, 565 (1961))).

As the example from the VASRD above shows, an individual who has undergone knee replacement surgery would be subject to a disability rating ranging from a high of 100% in the year following the surgery to a rating as low as 30% depending on his recovery and symptoms. Notably, petitioner's monthly retirement benefit of approximately $1,125 in 2011 was considerably more than the monthly VA benefit for a veteran with a 30% disability prescribed in 38 U.S.C. secs. 1114 and 1134.

Although we appreciate the seriousness of petitioner's injury, we lack any objective evidence to determine whether the VA would have awarded him disability compensation in 2011. Petitioner acknowledged at trial that he has

never submitted to a physical examination at a VA facility nor been awarded a disability rating by the VA. Aside from his own testimony that he is certain that he is entitled to VA disability benefits, petitioner did not offer any objective evidence showing that he had knee replacement surgery in 2009 or his physical condition in 2011 that would permit the Court to conclude that he would be entitled to receive disability compensation from the VA, and, if so, the amount of that compensation. Consequently, we are unable to conclude that any amount of his disability retirement pay is excludable from gross income under section 104(a)(4).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.